Argued November 15, reversed December 31, 1968

SILVERNALE et ux, *Respondents, v.*
LOGAN et ux, *Appellants.*
448 P. 2d 530

*G. W. Kellington,* Medford, argued the cause for appellants. On the brief were Harbison, Kellington & Kellington, Medford.

No appearance for respondents.

Before Perry, Chief Justice, and Sloan, Goodwin, Holman and Langtry, Justices.

LANGTRY, J. (Pro Tempore).

Defendants have appealed from an equity decree which adjudged a ditch and water pipeline to be easements by implication appurtenant to land, enjoined interference therewith, and awarded $500 damages to plaintiffs.

Plaintiffs' and defendants' adjoining tracts were part of a larger acreage patented to the Wilbers. The Wilbers, before disposing of any of this homestead, developed and obtained a right for water arising in a spring off the land, and brought it to the land through a main ditch, sometimes called "the creek." The evidence is conflicting but it appears that some of this water, diverted through a "little ditch," was used for irrigating plants around their home and for domestic purposes. They also used a well supplied by an underground flow as distinguished from seepage from the "little ditch." The well was a few feet from the back door of their house. The Wilbers' son-in-law, Lemmon, testified positively that this well was the source of the Wilbers' domestic water immediately preceding the construction of the pipeline; that he cleaned it out

for them; that water came into it from underground; that it was 12' to 14' deep; and that it never went dry. No plumbing then existed in the Wilber home..

In 1941, the Wilbers deeded an acreage from the total acreage to their daughter and son-in-law, the Lemmons, making no reservation of any easement, although the "little ditch" crossed the deeded tract in order to reach the property on which the Wilbers' home was situated. The Lemmons built a house on their tract, and in the early 1950's ran a pipeline up to the main ditch some 300 feet away for domestic water. The Wilbers still lived below and several years after the Lemmons piped water to their house, the pipe was extended to supply the Wilber house. It was laid on the ground surface under the Lemmon house and buried beyond to the Wilbers who installed plumbing. In subsequent years, the separate tracts were conveyed; Lemmon first to Sinkeys; Sinkeys to defendants Logan; Wilbers to Boyds; Boyds back and forth twice among themselves; then Boyds to plaintiffs Silvernale. The Silvernales acquired their tract several years ahead of Logans, and leased it until they were ready to move into it. Logans lived on their property immediately after buying it, which was before the Silvernales lived on theirs. None of the deeds of the Lemmon tract reserved an easement across to the Silvernale tract for the "little ditch" or the pipeline. Mr. Lemmon testified, "I never thought nothing about it * * *."

The Logans testified that they inquired of the real estate salesman about the "little ditch." He replied it supplied a small fish pond which was in the extreme lower corner of the Lemmon tract. Lemmon said he put the fish pond in and the "little ditch" supplied it.

The Logans testified they had no knowledge of the continuation of the pipeline; no one told them of it, and they could not see it. Mr. Logan said he saw the pipe under the house, but inasmuch as a hydrant was on the lower side of the house for irrigation he thought that pipe was there to supply that hydrant. The pipe under the Logan house was noisy when water was used in the lower house, but the Logans at first lived outside in a trailer house for several months and said they did not hear it. Logans testified the tenants occupying the Silvernales' house at that time used little water; hence, there must have been little noise. The first intimation they had of the continuation of the pipeline was several months after purchase when the intake screen at "the creek" fouled and the tenant on the Silvernale place came up to see why the water had stopped. No evidence contradicted this testimony of the Logans'.

The deed of the Silvernale tract from Wilbers to Boyds made a reservation "Subject to established rights of way for roads and ditches whether of record or otherwise." Several deeds passed back and forth between Boyds, with the same reservation, and then Boyds conveyed to Silvernales. In this deed appears for the first time the following:

"Together with water Right for domestic and garden uses from existing gravity flow system."

The deed conveys an easement with the land for access on a road over joining land, but makes no mention of an easement for water pipe or ditch, or any other easement.

The trial judge held that the evidence supports a finding of easement by implication for the "little

ditch" and the pipeline. His remarks at the conclusion of evidence indicate he relied upon 25 Am Jur 2d 444, Easements and Licenses § 30. There it is said:

"A use imposed on one part of property for the benefit of another part, to be sufficient as the basis of an implied easement on the severance of ownership, must be apparent. 'Apparent,' as used in this connnection, does not mean actual visibility, but rather susceptibility of ascertainment on reasonable inspection by persons ordinarily conversant with the subject. Hence it is that underground drains may constitute an implied easement, even though not visible from the surface. But obviously each case must depend upon its particular facts. If the drain is not apparent upon an inspection, the right to use it will not be implied."

In *Dressler et al v. Isaacs et al,* 217 Or 586, 596, 343 P2d 714 (1959), we said:

"* * * It is generally agreed that implied easements are not favored by the courts. [Citing cases.] Various reasons have been given for this rule of strict construction. [Citing cases.] It would seem enough to say that a man's land should not be burdened with an easement unless the intent to create it is clearly manifested or the circumstances are such as to clearly show that had the grantor considered the matter he would have intended an easement to burden his land * * *."

■ The first transferor of title to the Lemmon tract who could have reserved an easement for the continuation of the pipeline was Lemmon himself. He did not and said he had no intentions in this regard. In his testimony he did not speculate on whether he would have intended to burden his land with an easement for his in-laws' land if he had thought of it. He positively asserted he alone constructed and paid for the first segment of pipeline to his house, although some of his

in-laws, in indefinite testimony, thought all of the pipeline, though built at different times, was sort of a mutual project. The continuation of the pipeline was unknown to Logans when they purchased, was not visible, and we conclude, from the preponderance of the evidence, a reasonable inspection would not have disclosed it. The most important fact is that the deeds from Lemmon to Sinkeys and Sinkeys to Logans reserved no easements.[1]

"A person who purchases land with knowledge or with actual, constructive, or implied notice that it is burdened with an easement in favor of other property ordinarily takes the estate subject to the easement. On the other hand, as a general rule a bona fide purchaser of land without knowledge or actual or constructive notice of the existence of an easement in such land takes title free from the burden of the easement. This rule as stated is broad enough to include *all easements, whether created by implication,* prescription, or express

---

[1] In the instant case, Lemmon deeded the servient estate without reservation to Sinkeys and Sinkeys to Logans. The evidence shows nothing about knowledge Sinkeys may have had at the time of their purchase. In this regard, it is interesting to note that in Hall v. Risley & Heikkila, 188 Or 69, 99, 213 P2d 818 (1950), we quoted and used the rule:

"'* * * [T]he covenant * * * creates an equitable burden of the land, which follows it into the hands of subsequent holders, with the single qualification that a subsequent owner who acquires the legal estate for value and without notice takes it free from this burden * * *.' 4 Pomeroy's Equity Jurisprudence, Fifth Edition, § 1295, p. 850.

"'* * * * *

"'* * * [I]f a second purchaser with notice acquires title from a first purchaser who was without notice and bona fide, he succeeds to all the rights of his immediate grantor. In fact, when the land once comes, freed from equities, into the hands of a bona fide purchaser, he obtains a complete jus disponendi * * * and may transfer a perfect title even to volunteers.' 3 Pomeroy's Equity Jurisprudence, Fifth Edition, § 754a, p. 57 * * *."

grant * * *." (Emphasis supplied.) 25 Am Jur 2d 502, Easements and Licenses § 97.②

This rule is applicable to claims of easement for pipe and ditch in this case, and perhaps should be conclusive. The rule is stated in the same terms in an Annotation, 174 ALR 1241, 1243 (1948). The annotation briefs numerous cases from several jurisdictions which are similar to the instant case. The general rule was followed in *Houston v. Zahm,* 44 Or 610, 76 P 641, 65 LRA 799 (1904).

The Logans could not be charged with looking at the recorded deed to Silvernales of the adjoining property before they purchased.

"* * * [A] person may subject his lands to any servitude, and transmit them to others charged with the same, but he cannot subject those belonging to others to any servitude whatever * * *." 44 Or at 623.

There are many cases where pipe or drainage lines and ditches are the claimed occupiers of implied easements on servient estates. Most of them turn on whether the circumstances were such that the pur-

---

② It is noted at the conclusion of the text in this section that some cases hold that easements obtained by implication or prescription, including ways of necessity, may be enforced against innocent purchasers who had no notice whatever. Cases from five jurisdictions are cited in support of this statement. There undoubtedly are circumstances where the necessity to the dominant estate, compared with the inconvenience to the servient estate, in equity, dictates such a result. However, we have adhered to the general rule quoted in the text. See Fitzstephens v. Watson et al, 218 Or 185, 344 P2d 221 (1959).

It is interesting to note that the Washington rule is the general rule, but added to it is the requirement that the dominant estate must be the first severed from common ownership. If the servient estate, as in the instant case, is the first severed from the common ownership, and there is no reservation of easement in the deed, there can be no implied easement. Wreggitt v. Porterfield, 36 Wash 2d 638, 219 P2d 589 (1950).

chaser by using reasonable observation and intelligence should have known at the time of purchase that they existed, although many also consider questions of necessity or importance, which are discussed infra.

A Pennsylvania case of 1858, *Jeffries vs. Mayberry*, 3 Phila (Pa) 143 (Dist Ct 1858), is in point with reference to the pipeline in the case at bar:

"* * * [I]t would seem plain that the grantee of land should not be charged with an easement on the ground of an implied reservation not set forth in the deed, and deduced solely from the existence of the easement at the time of the grant, unless the facts which give rise to or constitute the easement, are shown to have been made the subject of a personal communication, or are so plain and notorious as to operate as notice, and thus justify a presumption of knowledge. The present controversy had its origin in the removal of a pipe leading under the defendant's yard, and furnishing a supply of water to the plaintiff's hydrant, and the defendant is said to be bound to suffer the pipe to remain, because he bought the premises while it was there, and while the house now owned by the plaintiff was still the property of the grantor, from whom both parties deduce their title. In order, however, to subject the defendant to a charge which might prevent him from digging a cellar in his yard, or using it for many of the purposes which render land valuable, it should at least appear that he knew, or ought to have known, that the pipe existed, and on this point the plaintiff's case is wholly deficient. The defendant saw a hydrant on his own land, and may well have inferred that there was another hydrant on the adjacent land, but how was he to know that the pipe * * * ran under his curtilage, instead of coming, as it might well have been [sic] done, directly from the street into the plaintiff's land? To raise an easement under such circumstances would operate as a surprise on the defendant, and do him an injury

greater than the benefit conferred on the plaintiff."

More cases are collected in annotations on the physical conditions that will charge a purchaser with notice. 41 ALR 1442 (1926), and 58 ALR 832 (1929).

The facts of *Dressler,* supra, are similar in several respects to those in the instant case, and applicable to the easements claimed for pipe and ditch. There we applied the rule that for a use to support an easement by implication the use must not only be apparent and permanent, but it must be "important" to the enjoyment of the dominant estate. In the instant case it is apparent, as it was in *Dressler,* that an existing well had supplied needed water to the dominant estate. Here, the well was, by the most reliable evidence produced, the sole supply of domestic water in the last few years the Wilbers lived on the property before the pipe was installed. The well did not run dry, and the water was potable. We pointed out in *Dressler* that the result might be different if the well would not produce needed water, but in the absence of evidence to such effect the ordinary purchaser of the dominant property would, in effect, have to produce his own water. The deed of the dominant property in *Dressler* purported to convey a water right, but no easement, just as this one does.

In *Dressler,* we said:

"It is not necessary for us to indulge in further conjecture concerning the purpose of the clause in question. The plaintiffs are asserting the existence of an easement; they have the burden of establishing it. * * * They do not meet this burden by furnishing us with a record which reveals possibilities as consistent with the nonexistence of an

easement as with its existence * * *." 217 Or at 595.

In *Jack v. Hunt et ux,* 200 Or 263, 264 P2d 461 (1953), where we denied the existence of an easement by implication for a roadway, we spoke in terms of the "necessity" for the claimed use of the servient land. It appears that the roadway for which the easement was claimed was in existence and quite visible at the time the deed without reservation was given. The lack of necessity for the road, or, to say it another way, its lack of importance alone, under the circumstances, was sufficient for denial. Cf. Restatement, 4 Property 2979, § 476 (1944). In comment g at 2984 it is said:

"* * * In the different situations that may appear, a constantly decreasing degree of necessity will require a constantly increasing clearness of implication from the nature of the prior use. Accordingly, no precise definition of necessity can be made."

■ The pleadings present the issue of easement by prescription which, because of its finding of easement by implication, the trial court did not decide. The rule from 25 Am Jur 502, supra, appears to dispose of this contention. However, evidence discloses that the use of the "little ditch" and the pipeline by the Wilbers after their warranty deed without reservation to the Lemmons was always with the active aid and consent of the Lemmons. Hence, with no color of title or right, and the element of hostile use missing, the facts do not support this contention, and there is no necessity to consider applicability of the general rule. See *Laurance et al v. Tucker,* 160 Or 474, 484, 85 P2d 374 (1938).

■ Although substantial weight is given the trial judge's findings in an equity case, it is tried de novo

on the record in this court, and, on the basis of that record and the applicable law, we hold that the plaintiffs failed to carry their burden of proof as to each of the claimed easements. The decree is reversed.