Argued October 10, 1974, reversed January 7, 1975

BROWN ET UX, *Respondents, v.* EOFF ET UX,
*Appellants.*

530 P2d 49

*Robert W. DeArmond* of DeArmond, Sherman & Barber, Salem, argued the cause and filed a brief for appellants.

*Cecil H. Quesseth,* Salem, argued the cause and filed a brief for respondents.

Before O'CONNELL, Chief Justice, and HOLMAN, TONGUE, HOWELL, SLOPER and LEAVY, Justices.

O'CONNELL, C. J.

This is a suit in equity to establish plaintiffs' right to use a roadway across defendants' land for access to plaintiffs' warehouse. The trial court found that plaintiffs possess an irrevocable license and awarded damages for payments made by plaintiffs to defendants to prevent interference with access. The defendants appeal, seeking to have the matter tried anew on the record.[1]

The record reveals that during the latter part of 1967, plaintiff and defendant[2] began negotiating for the purchase by plaintiffs from defendants of approximately two acres situated at the corner of Madison and Taft Streets in the northeast part of Salem, Oregon. Plaintiff's express purpose for the purchase was the construction of a commercial warehouse for lease to tenants who would require access by their trucks. Until sometime before final closing of the sale, both parties contemplated that this access would be available by way of Taft Street N.E. They discovered just be-

---

[1] Plaintiffs' alternate claim to an easement by necessity was correctly denied by the trial court and has been abandoned.

[2] Although both properties are held jointly, the men are the only active participants in the dealings involved here. We, therefore, shall refer to the parties in the singular.

fore closing, however, that Taft Street was closed to truck traffic by virtue of a zoning ordinance of the city of Salem. After this discovery and probably[9] before closing, plaintiff and defendant met on the property to discuss the situation. According to plaintiff, defendant pointed out a pre-existing roadway over his remaining property which could serve as access to and from an unrestricted portion of Madison Street N.E. Defendant does not question that several such conversations took place, but denied that he granted to plaintiff a permanent license to cross his property. Defendant contends that about the time of the closing plaintiff began inquiry as to the purchase of portions of defendant's contiguous land for a trucking terminal in addition to the warehouse site and requested the right to cross the prospective purchase pending sale. Defendant states that he granted temporary permission only to use the road on this basis.

It is undisputed that for a period of more than a year the parties did negotiate for the purchase by plaintiff of an additional parcel of defendant's land. The testimony and exhibits also reveal that after the initial sale both parties made numerous attempts to provide other means of access by application to the Planning Commission for conditional use permits on Taft Street, by the dedication of another street or by the establishment of a corridor through neighboring property to the road to the north.

In the spring and summer of 1970, defendant requested plaintiff to either complete the additional pur-

---

[9] Defendant testified that he did not know when discussion of use of the road had taken place. Plaintiff testified in answer to a question on whether the escrow had been completed: "No, I don't think so."

chase, cease using the roadway, or begin paying rent for the roadway. In response, plaintiff wrote to defendant on July 21, 1970, reaffirming his plans to complete the purchase and requested the defendant to "bear with me just a little longer until such time as I can give you a definite time table as to my intentions."

In August of 1970, defendant made a demand for payment of $510 per month rental effective that month. In September, the roadway was blocked for a few hours because of non-payment. Plaintiff met defendant's demands and the road was re-opened. On September 9, plaintiff wrote to defendant complaining of a lack of precision in their arrangement as to the road and requesting clarification and reduction of rent. He made no claim of right to cross defendant's land and did not dispute his duty to pay an appropriate rent. The letter concluded with the request that a formal lease be executed and enclosed a check for $510 "on the condition that the terms as outlined be clarified for our mutual benefit."

No lease was executed and payments ceased after several months. Defendant renewed his demands at an increased rental in August of 1972. Some six months later the road was closed again and payment was made under protest at the rate demanded. This suit was filed shortly thereafter.

Defendant's basis of appeal is that the court erred in finding that plaintiff had proved a promise to allow plaintiff to use the land, which promise was rendered irrevocable by virtue of equitable estoppel.

■ Oregon is one of a minority of jurisdictions which

recognize the possibility of an irrevocable license.[4]  We have held that one who induces another to make significant expenditures for permanent improvements in reasonable reliance upon one's promise to allow a permanent use of land is subsequently estopped from revoking the license.[5]

The crucial question in the present case is whether plaintiff met his burden of proving by clear evidence that a promise was made to permit his use of defendant's land for an unlimited time.  Defendant admits there was oral permission to cross his land, but that it was to be good only until the second purchase was effected.  There were no witnesses to any conversations on this matter.  Thus, we have to decide between directly contradicting testimony.  In the essentially similar case of *Shepard v. Purvine*,[6] plaintiffs and defendants likewise disagreed on the duration of the license that admittedly had been given.  The court formulated the following guide for resolution of the problem:

> "* * * Where there is a direct dispute between two persons in their oral testimony upon a vital

---

[4] Heisley v. Eastman, 102 Or 137, 201 P 872 (1921).

[5] *Id. See* Restatement, Property (Servitudes) § 519 (4) and comment *e* (1944).  But see Powell on Real Property, ¶ 427 (1973):

> "* * * A substantial amount of confusion in the law is traceable to the use of such terms as 'licenses coupled with an interest,' 'irrevocable licenses,' 'executed licenses' and similar expressions. That which is important is the *existing* relationship between the parties. That relationship may have *begun* with a revocable permission, but if that permission has been followed by events which have eliminated its revocability, it is submitted that the *existing* relationship should no longer be called a license, but rather an easement, as it truly is."

[6] 196 Or 348, 248 P2d 352 (1952).

issue, the truth must be determined, if possible, from the proved circumstances of the case." (196 Or at 365.)

The principal circumstance supporting plaintiff's contention that he relied upon a promise made by defendant is that plaintiff built a warehouse upon the land when truck access by other methods was in doubt. The strength of this fact is lessened, however, by the fact, apparent in the record, that he continued to seek other modes of access after construction. It is also apparent that he had a permit to construct a driveway at the southwest corner of his property to an unrestricted portion of Madison Street N.E. in 1968, before the sale was closed. Thus, these facts are as consistent with a temporary license as one of unlimited duration.

Plaintiff also points to his expenditure in reliance on the license. The problem here is that the only expenditures with respect to the roadway itself were for grading, graveling and oiling, none of which are essentially permanent or particularly expensive.[2] The expenditures are thus as referable to a revocable license as to an irrevocable license.

---

[2] *See* Hallock v. Suitor, 37 Or 9, 13, 60 P 384 (1900). Plaintiff attempted to emphasize his reliance on the license by reference to considerable expense incurred in improving and adding to a railroad spur and the construction of an additional spur on plaintiff's land. This is not relevant to permission to use the road. The significance of building the railroad spurs in this litigation is not entirely clear. The construction and use of the spurs are unrelated to the road and there has been no apparent attempt to deprive plaintiff of their use. The complaint and decree do not mention the construction of the spurs at all. Reference, if any, to the spurs in the answer is inferential and ambiguous at best. Given this, we express no opinion as to the rights of plaintiff, if any, as to the spurs, nor do we rely on evidence of the spurs in determination of any issues in this appeal.

In any case of disputed construction of an oral agreement, the practical construction given it by the parties is extremely persuasive. In this connection, as we have already noted, plaintiff did not assert a *right* to traverse defendant's land during any of the difficulties following the gradual disintegration of his plans to purchase land from defendant. The only fair construction of his position at that time is that he recognized defendant's right to impose conditions upon the use of the roadway, including the revocation of the right to use it. This comes out clearly in plaintiff's letter to defendant, dated September 9, 1970:

"Inasmuch as I am not able, because of lack of funds, to purchase the property as set forth in our original agreement, I am hindered from developing a terminal relocation at this time. * * * I can give you no assurances that funds will be available within the foreseeable future. It would then appear that the arrangements that we have will be in effect for some time to come. But I cannot stand to pay $5,000 a year for the right of easement to my warehouse and I will have to consider approaches directly off of those streets bordering my property *that do not leave me subject to closure at your hands.*

"*I would be more than willing to pay a reasonable figure for the right of access,* but quite frankly, I feel that $500 a month for this privilege is prohibitive and based upon the restrictions presently prevailing on the property being rented, a definite set of boundaries and conditions should be established. I am sending a copy of this letter to Mr. De-Armond with the request that some formal lease form be drawn up that would be amenable to both you and me so that I can have some assurances that access will be available for my investment.

"Your Mr. Ritter has advised me that you intend to proceed to close off the property in question if I do not meet certain deadlines. I enclose a check for

$510 on the condition that the terms as outlined be clarified for our mutual benefit." (Emphasis added.)

The clear import of this letter is a recognition that the license was not permanent. No other action or statement by plaintiff was inconsistent with this position up to the time of the complaint. The defendant, on the contrary, did nothing subsequent to the construction of the warehouse inconsistent with his position that the license was nothing more than an accommodation of a prospective purchaser pending final agreement.

This view of the situation is supported as well by the fact that the deed did not incorporate the claimed unlimited right of access. According to plaintiff's testimony, the license was granted about six weeks before the closing. Both parties are businessmen with experience in land dealings. The land involved was worth approximately $20,000 per acre. It seems improbable that such an important and valuable right as that claimed by plaintiff would be left to the frailties of human memory and problems of proof at trial by two such parties, apparently represented by counsel.[9]

■■ Viewed as a whole, the evidence is insufficient to justify a finding that plaintiff clearly established an irrevocable license. Plaintiff's own evidence is, for the most part, at least as consistent with a temporary license as with a permanent one. Even written instruments which are claimed to create rights similar to those claimed by plaintiff are strictly construed in fa-

---

[9] This is not like Shepard v. Purvine, *supra,* where the court points out that because the parties were close friends it was not unreasonable for them to assume that an oral agreement would suffice.

vor of the free use of land.[⑨]  An oral promise to allow rights which amount, in effect, to an easement should be treated no more favorably, especially in light of the statute of frauds.

Reversed.

[⑨] Dressler v. Isaacs, 217 Or 586, 595, 343 P2d 714 (1959).