Argued and submitted December 9, 1980,
affirmed May 18, reconsideration denied June 25,
petition for review denied July 21, 1981 (291 Or 368)

COREY et ux,
*Appellants,*

*v.*

UNITED SAVINGS BANK, MUTUAL,
*Respondent,*

(No. 109,250, CA 18015)

628 P2d 739

W. Wallace Ogdahl, Salem, argued the cause for appellants. With him on the brief was Ferder & Ogdahl, Salem.

Lynda D. St. Jean, Salem, argued the cause for respondent. On the brief was Richard H. Allen, Salem.

Before Richardson, Presiding Judge, and Thornton and Buttler, Judges.

BUTTLER, J.

Thornton, J., dissenting opinion.

**BUTTLER, J.**

Plaintiffs appeal from a trial court decree declaring that they have no right to an easement of access between their property and that of defendant and denying plaintiffs an injunction. Plaintiffs contend on appeal that the evidence was sufficient to establish plaintiffs' right to an express easement over the property in question, or that plaintiffs are entitled to an irrevocable license in the nature of an easement because of substantial expenditures they claim to have made in reliance on defendant's predecessor's promise to permit common access. We affirm.

Plaintiffs purchased their parcel in 1959 and erected and operated a fast-food restaurant thereon the following year. At that time the parcels which adjoin plaintiffs' corner parcel were used as a tree nursery and pasture. Sometime prior to 1964, defendant's predecessor, Far West Properties, Inc., purchased the two adjoining parcels and developed them as a shopping center. Incidental to that development, Far West and plaintiffs exchanged two small parcels of their respective lands of approximate equal area. This exchange was mutually beneficial in that it squared off plaintiffs' parcel and gave Far West ownership of a finger of land, originally part of plaintiffs' land, which jutted into defendant's parcel. Plaintiffs contend that at the time of the exchange, it was agreed that the parties would have mutual access between the properties along their common north boundary.

In support of their contention, plaintiffs offered a letter dated July 1, 1964, purportedly signed by an employe of Far West. After referring to the improvement plan and the exchange of parcels, that letter states:

"If you agree to allow common access along the North side of your property (except the incinerator area), we will tile the creek, remove your concrete curb and wood fence and pave to, and match, your existing asphalt pavement in such a manner as to minimize the possibility of our yard drainage entering your property. The tiling will extend to the Northwest corner of your new property and South from that point a sufficient distance to eliminate any chance for erosion around your incinerator area. If this common access arrangement goes into effect, we will not put in the concrete wall and wood fence North of your incinerator,

but rather we will incorporate the paving around your incinerator with our parking paving and install as much of the North fence, which we have removed, as necessary to enclose your incinerator on the North, West and South sides.

"We are looking forward to a harmonious, equitable relationship with you, and hope that this letter will be sufficient assurance of our good intent to allow you to execute the deed in our behalf and authorize us to proceed with the common access operation."

The exchange deeds were recorded on July 15, 1964; however, neither deed mentioned any easement or agreement between the parties. Pursuant to the letter, the improvements to plaintiffs' property and the common boundary were made by Far West; they created a continuous asphalt surface over which cars could pass. Lines for parking slots were painted on the shopping center property, including along a portion of the plaintiffs' north boundary; all of the parking alleys running in an east-west direction terminated at the west end approximately 60 feet from the west boundary nearest the street, leaving an aisle open to permit passage of traffic. An arrow was painted on the shopping center lot in that aisle to direct traffic, including that coming from the direction of plaintiffs' premises, to the south.

In 1965, Far West conveyed the property to D & L Properties, Inc., which, in turn, conveyed it, to the trustee of a testamentary trust in 1971.[1] Defendant bought the land in 1974. Plaintiffs admit that no mention of an easement in their favor appears in any deed or other recorded instrument.

In 1978, defendant resolved to build a branch bank on the part of the parking lot adjacent to plaintiffs' premises. Part of that plan was to construct a five-foot high wall along the boundary line, which would cut off access between the shopping center and plaintiffs' land. When plaintiffs learned of this proposal, they brought this lawsuit to enjoin defendant from erecting the wall or otherwise disrupting use of the access.

---

[1] The trustee was joined as a third-party defendant and made no appearance either in trial court or on this appeal.

The trial court found that the letter quoted above and full performance of the agreement were sufficient to overcome defendant's objection that the transaction failed to comply with the statute of frauds. The court held, however, that the language of the letter evidenced only an intent to create an easement of access in the shopping center and its customers, not to create a "reciprocal servitude." Defendant, as holder of the dominant estate, was therefore free to terminate the easement at any time. The court held further that, assuming the language was broad enough to evidence an easement in favor of plaintiffs, there was insufficient evidence to show that the purchasers from Far West in 1965 and 1971 had notice sufficient to require them to inquire into the possible existence of an easement.

■     We agree with the trial court's conclusions, although it may be only a matter of semantics whether the letter was a sufficient memorandum in general, but not a sufficient, or any, memorandum to charge the Far West property with a perpetual easement in favor of plaintiffs' property.

Aside from the exchange of land between plaintiffs and Far West, which stood on its own merit and was for the benefit of both parties, the letter does not grant, or even agree to grant, any interest of any kind in the Far West shopping center property. The critical language of the letter is: "If *you* [plaintiffs] agree to allow common access along the North side of *your* property (except the incinerator area), we will tile the creek, * * *." (Emphasis supplied.) It is clear from that language that Far West sought permission to allow cars from plaintiffs' property to pass into the Far West shopping center property for the benefit of Far West, in consideration for which Far West agreed to do certain things for plaintiffs, all of which were specifically set forth in the letter and none of which included the granting of any easement or servitude over Far West's property for the benefit of plaintiffs' property.

The letter, therefore, is not a sufficient memorandum to charge Far West with an obligation to provide any form of easement or servitude over the shopping center property in favor of plaintiffs' property, and there was no other writing between the parties with respect to this

matter. That letter would be a thin reed, indeed, on which to hang the burden of a perpetual easement over defendant's property for plaintiffs' benefit. The use to which defendant's property could be put would be forever limited—and with little, if any, apparent countervailing advantage to plaintiffs unless defendant is required to continue the property's use as a shopping center with substantial parking available. Certainly, no such requirement exists. If defendant constructs an office building on the property, must it provide a tunnel access through the building for plaintiffs' access? Such questions are endless. ORS 41.580(5) provides:

> "In the following cases the agreement is void unless it, or some note or memorandum thereof, expressing the consideration, is in writing and subscribed by the party to be charged, or by his lawfully authorized agent; evidence, therefore, of the agreement shall not be received other than the writing, or secondary evidence of its contents in the cases prescribed by law:

> "* * * * *

> "(5) An agreement for the leasing for a longer period than one year, or for the sale of real property, or of any interest therein."

■ There being no sufficient memorandum to charge Far West's property with any easement or servitude in favor of plaintiffs, or to charge Far West with the obligation to create such an easement or servitude in favor of plaintiffs, plaintiffs have not passed the first hurdle. Therefore, plaintiff Robert Corey's testimony at trial purporting to explain what the parties intended was evidence respecting an agreement different from the one of which the letter was a memorandum. That evidence was not admissible; it related to a void oral agreement to create an interest in real property.

■ But even if the letter were a sufficient memorandum charging Far West's property with an easement or servitude of some kind, the evidence does not disclose that there was anything about Far West's premises at the time defendant, or its two predecessors in interest, purchased it which would put a reasonable person on notice that plaintiffs had any such interest. Although as a general proposition, the one claiming the status of a *bona fide* purchaser

has the burden of proof on that issue, an important consideration in so placing the burden in equity cases is that the one claiming the status has it within his peculiar knowledge to prove his status. That is not the case here.

■ The defendant was the third purchaser subsequent to the 1964 letter on which plaintiffs rely, and if any one of the intervening purchasers was a *bona fide* purchaser, then defendant has that status even though it had actual knowledge. *Hall v. Risley and Heikkila,* 188 Or 69, 213 P2d 818 (1950). It is highly unlikely, under these circumstances, that the status of the prior two purchasers would be peculiarly within defendant's knowledge. *See Nelson v. Hughes,* 290 Or 653, 659 n 8, 625 P2d 643 (1981). Defendant is a newcomer, whereas plaintiffs have owned their property and operated their business there during the entire period.

■ Furthermore, plaintiffs alleged that defendant had actual notice of the claimed easement, and at trial assumed the burden of proving that defendant was not a *bona fide* purchaser for value without notice of plaintiffs' claim. In doing so, they rely on what a person would observe upon viewing the premises. We conclude that the evidence is not sufficient to sustain plaintiffs' burden.

■ A prospective purchaser has no affirmative duty to investigate the possibility of any unrecorded interests in the property which might be claimed by a third party; the purchaser may be charged with knowledge only where the circumstances are such that the purchaser, by using reasonable observation and intelligence, should have had notice at the time of purchase that they existed. *Silvernale v. Logan,* 252 Or 200, 206-7, 448 P2d 530 (1968). In *Silvernale,* the court quoted, as being in point, language from *Jeffries v. Mayberry,* 3 Phila (Pa) 143 (Dist Ct 1858), as follows:

"'* * * [I]t would seem plain that the grantee of land should not be charged with an easement on the ground of an implied reservation not set forth in the deed, and deduced solely from the existence of the easement at the time of the grant, unless the facts which give rise to or constitute the easement, are shown to have been made the subject of a personal communication, or are so plain and

notorious as to operate as notice, and thus justify a presumption of knowledge. * * *'" 252 Or at 207.

The circumstances here do not rise to that level. Plaintiffs contend that a reasonable prospective purchaser looking over the property in question would have observed an arrow painted on the parking lot portion of the shopping center property directing traffic which could be coming from the direction of plaintiffs' property, and also would have observed substantial traffic between the properties in that area as well as along the entire north line of plaintiffs' property. Those observations, they argue, would have indicated that traffic moved back and forth between the two properties over and across plaintiffs' entire north line, including the area designated for parking. If those observations were made, presumably one would be aware that the painted lines and arrows were not being honored. Plaintiffs introduced as an exhibit a drawing showing the layout of, and markings on, the two properties. A portion of that drawing is reproduced herewith.

The arrow to which plaintiffs refer is circled on the drawing, and for all that appears it is intended to direct traffic coming down the traffic aisle on the Far West property toward the east to turn left in the direction of the arrow. There is no arrow pointing to the south toward plaintiffs' property. Plaintiffs also point out that the eastern termination point of the parking spaces immediately north of plaintiffs' north property line is such as to allow sufficient space for cars to pass between the two properties. It is also true, however, that the parking spaces to the north of those to which plaintiffs refer terminate along the same line at the east end. It is true that the parking stalls on the east boundary of the Far West property are slanted to the south, suggesting that at least some of the automobiles parking in them would be approaching from plaintiffs' property. The most that these circumstances taken together might suggest to a prospective purchaser is that the Far West property had acquired the right, for its benefit, to permit traffic from plaintiffs' property to come on to the Far West shopping center property, but not vice versa. That being the case, a prospective purchaser could conclude reasonably that it was entitled to cease exercising that right if it wished to do so.

To go a step further, even if a prospective purchaser would be put on sufficient notice of some obscure rights in plaintiffs such that the purchaser had a duty to inquire further, presumably the purchaser, upon further inquiry, would have been shown the July 1, 1964, letter. As already indicated, that letter purports to do just what the layout of the land suggests to a reasonable person.

■ Plaintiff Robert Corey testified that defendant, before purchasing the property, had it inspected and surveyed, but did not consult plaintiffs regarding any claim they might have. It is more significant, however, that plaintiffs, observing defendant's activities on the property, did not advise defendant of its claimed rights. The record does not support plaintiffs' claim that defendant, or its two predecessors, had actual knowledge of plaintiffs' claim. To repeat more of the language quoted by the Oregon court in *Silvernale* from *Jeffries v. Mayberry, supra:*

"'* * * To raise an easement under such circumstances would operate as a surprise on the defendant, and do him an injury greater than the benefit conferred on the plaintiff.'" 252 Or at 207-8.

■ Plaintiffs' final contention is that they have an easement over defendant's property by reason of equitable estoppel. They claim that Far West induced them to make "significant expenditures" for improvements in reasonable reliance upon Far West's promise to allow a permanent easement over its land, relying on *Brown v. Eoff,* 271 Or 7, 530 P2d 49 (1975). Their theory is sound enough, but the record supporting it is wanting. The improvements to the common boundary were made by Far West at its sole expense.

Affirmed.

**THORNTON, J.,** dissenting.

I dissent. In my opinion there is more than sufficient evidence from which to conclude that plaintiffs and Far West intended the right of access to be mutual and that the condition of the premises would put a reasonable person on notice that plaintiffs had a potential interest in the access way between the shopping center and plaintiffs' restaurant.

The majority makes no effort to deal with the import of the word "common" in the Far West letter to plaintiffs. If the letter merely referred to "access," I would agree that no reciprocal rights were intended. However, the presumption is that the parties intended something by the word. ORS 42.230. When the letter was written, there was no access of any kind along the north side of plaintiffs' property. There was a creek separating their restaurant from a plant nursery. It cannot be contended therefore that the parties intended Far West to have a right to use an existing access *in common with* plaintiffs. It must refer to construction of a new access which the patrons of each would be entitled to use. The conclusion of the majority (slip op. p. 5, line 4) that the letter evidences only an intent to grant access to defendant is untenable.

Even the language which the majority deems critical does not necessarily support its conclusion. In my view, the language is equally consistent with the interpretation that defendant was attempting to persuade plaintiffs to go through with a previously discussed arrangement, one of the selling points of which was that access would be "common," with the prospect of increasing plaintiffs' (as well as defendant's) business.[1]

The majority next concludes the memorandum is insufficient to satisfy the statute of frauds, ORS 41.580, although it fails to state just how this letter is insufficient as a memorandum. On the contrary, the letter expresses the consideration (access to Far West), is in writing and is signed by an agent of Far West. It also states the terms upon which the interest is to be conveyed (simple exchange of access rights with defendant to do the construction as part of building the parking lot). *Webster et ux v. Harris,* 189 Or 671, 679, 221 P2d 644 (1950). As far as I can determine, this satisfies the statute.

---

[1] The majority seeks to bolster its conclusion with rhetoric: does the agreement require defendant to operate the shopping center in perpetuity; would defendant, if it put a building on the boundary, be obliged to tunnel through it to continue access? Obviously, defendant is no more disadvantaged than any landowner who, for a contemplated benefit, arranges a mutual easement with a neighbor and subsequently determines the easement is not as advantageous as originally projected. Defendant may certainly go out of the shopping center business, if it desires, in which case the access would be of little use to plaintiffs and would likely fall into disuse. The fact that defendant made a bad bargain is not a basis for relief in this court.

Since the letter was a sufficient memorandum, plaintiffs' testimony was admissible as to the circumstances surrounding the agreement. He testified to nothing which varied the terms of the letter, other than to state that the written offer was orally accepted, proof of which is permissible under Oregon law. *Alpha Phi of Sigma Kappa v. Kincaid,* 180 Or 568, 571-72, 178 P2d 156 (1947). In fact, the agreement has been completely performed, which removes it from the statute of frauds entirely. *Grover v. Sturgeon,* 255 Or 578, 584, 469 P2d 617 (1970).

Finally, the majority states that the circumstances were not sufficient to put a reasonable person on notice that the right of access across plaintiffs' north boundary existed. In doing so, it relies heavily on the blueprint for construction of the parking lot. At best, this drawing is ambiguous. The direction of the arrows is equally consistent with a plan to direct traffic in the same direction as the parking stalls. Photographs and other exhibits in the record reveal that there was absolutely nothing to prohibit drivers from going either direction across the boundary line. The trough along the entire line caused by the settling of asphalt under the wheels of vehicles and plaintiffs' testimony that a person who watched the lot for several minutes would see traffic in both directions indicate that such traffic was observable and frequent. There was no evidence to the contrary.

In my view, this is sufficient to put a purchaser of the shopping center on notice that some interest may exist in plaintiffs. Had defendant bothered to inquire by means of a simple phone call, plaintiffs would have told them they claimed right of access. Perhaps defendant would have seen the letter and agreed with the majority that it was at odds with plaintiffs' asserted interest, but that has no bearing on the matter of notice. It is not all that surprising that plaintiffs did not take it upon themselves to contact defendant about the access unless it can be said that a person in plaintiffs' position would necessarily communicate with every *prospective* purchaser on the subject. Plaintiffs may well have assumed that Far West would have pointed out the mutual access to its successor (and on down the line) since they had no reason to believe the arrangement was no

longer satisfactory prior to the attempted construction of the wall.

I conclude that there was an express easement of access here and therefore respectfully dissent.