Argued and submitted March 8, on appeal, reversed in part; vacated in part; otherwise affirmed; cross-appeal dismissed; remanded for entry of judgment consistent with this opinion October 13, 2004

# Phillip H. PFAENDLER,
*Appellant - Cross-Respondent,*

*v.*

# Noah BRUCE,
*Respondent - Cross-Appellant.*

## 02CV0001; A120442

98 P3d 1146

Clayton C. Patrick argued the cause for appellant - cross-respondent. On the briefs was Patrick R. Foley.

Eugene V. Anderson argued the cause and filed the brief for respondent - cross-appellant.

Before Edmonds, Presiding Judge, and Wollheim and Schuman, Judges.

EDMONDS, P. J.

## EDMONDS, P. J.

This case concerns claims involving two different easements. Plaintiff appeals after the trial court ruled against him. Defendant cross-appeals, challenging the award of attorney fees and costs that the trial court awarded to him. On *de novo* review, ORS 19.415(3) (2001),[1] we reverse in part, affirm in part on appeal, and vacate the award of attorney fees and costs to defendant. We dismiss the cross-appeal as moot.

Plaintiff and defendant are neighbors. Their homes are located along the coast near Brookings in a subdivision situated on a hillside. The subdivision was developed in increments, and the parties' lots are within an area referred to as the Third Addition, consisting of eight lots. The lots are neither uniform nor arranged in a systematic pattern. All of the lots, when created, had the potential for ocean views. In 1995, plaintiff purchased lot 6, the first lot sold in the Third Addition and built a one-story home with an ocean view. In 1999, defendant purchased lot 4 in 1999 and began construction of his home. Lot 6 is generally flat and is directly above lot 4. Lot 4 is steep and slopes downward from lot 6.

The lots within the subdivision are subject to restrictive covenants described in a declaration of covenants, conditions, and restrictions (CC&Rs). The CC&Rs provide that no home can be built in the subdivision unless the plans are approved by the three-member Architectural Control Committee (ACC), which was established by the CC&Rs. The original ACC consisted of two of the developers of the subdivision and a landowner with property adjacent to the subdivision. The CC&Rs provided that the first person to purchase property in the Third Addition would replace one of the developers on the committee. The CC&Rs set out a standard for approval of home plans to ensure that new homes would be in harmony with the surrounding structures and topography. The ACC was required to look at the nature, kind, shape, height, materials, and location of proposed homes. At the

---

[1] ORS 19.415(3) was amended in 2003. The amendments apply only to judgments entered on or after the effective date of the 2003 Act. Or Laws 2003, ch 576, § 90a. Thus, the 2001 version of the statute applies to this case.

time of the construction of defendant's home, plaintiff was a member of the ACC, which was responsible for reviewing defendant's plans.

Plaintiff built a one-story home on his property because of a physical condition. In order to protect the view from lot 6, he negotiated with the developers at the time of purchase to impose a height restriction for any structures built on lots 4 and 5, which are located on the hillside sloping downward from lot 6, that limited homes on those lots to two stories. However, the developers neglected to record the height restriction or to include it in the deeds to the purchasers of the lots. When defendant purchased lot 4, he was aware of the CC&Rs but did not know of the height restriction. He began construction of a three-story home on the lot in late 1999 or early 2000. In a previous lawsuit, plaintiff unsuccessfully sought to have defendant tear down his home for violating the CC&Rs.[2]

For purposes of our discussion, we understand the configuration of the lots to be as shown below. Plaintiff's lot (lot 6) is accessed by a gravel driveway that goes from Marina Heights Drive along the west edge of defendant's lot (lot 4). The original subdivision plan provided for a 20-foot wide easement over lots 4 and 6 for ingress, egress, and utility purposes. A gravel road that runs along the west edge of lot 4 and benefits lot 6 is located principally within the 20-foot easement. The easement runs in a relatively straight line from the southwest corner of lot 4 in a northeast direction until it reaches the southern property line of lot 6. Once on lot 6, the easement and driveway curve to the east, running parallel to lot 6's southern property line. The dashed lines on the map indicate the existing easement on lot 4 that benefits lot 6. Shortly after plaintiff purchased his lot, the developers of the subdivision, who owned the remaining lots at the time, vacated the portion of the easement that was on lot 6. The easement, as modified, ended at the south property line of lot

---

[2] After defendant prevailed in the trial court, plaintiff appealed. During the course of the appeal, the developers, who were not parties to that case, agreed to purchase plaintiff's home and to adjust the purchase price for any depreciation resulting from the obstruction of plaintiff's view by defendant's home. The record does not indicate that a sale actually occurred. We therefore assume that plaintiff remains the owner of the property at issue.

6. The diagonal lines on the map indicate the vacated easement on lot 6.

When defendant visited lot 4 before purchasing it, he noticed the driveway that ran along the property and assumed that it was the subject of an easement. His realtor told him that he could gain access to the upper area of his lot by using the portion of the driveway that extended onto lot 6, that is, the previously vacated easement over plaintiff's property. Based on his understanding that he had an easement on plaintiff's property, defendant ultimately positioned his house on his property in order use the upper area of the lot for parking.

Both during and after construction of his home, defendant used plaintiff's driveway for access to the upper area of his lot. In September 2001, on the advice of his attorney, plaintiff built a fence inches north of his southern property line and the upper area of defendant's lot. The fence prevents defendant from driving onto plaintiff's property to use the upper area of defendant's lot.

Before construction of defendant's home, rainwater collected in the common boundary area between lots 4 and 6, which was a low area in the terrain. After defendant built his home, he poured concrete steps and an entry walkway on the north side of his home, with a slope that drained to the north. To the east of the walkway, a portion of the entryway was designed to drain to the south. Defendant also built a retaining wall to the edge of the driveway on his property. Those structures intrude into plaintiff's easement over defendant's

property. The deepest encroachment into plaintiff's easement is approximately six feet, where the wall is located. The driveway curves, mostly on plaintiff's property, immediately after the end of the retaining wall.

Rainwater draining from plaintiff's property and from defendant's entryway collected on the property line and drained down defendant's driveway, eroding the driveway and depositing gravel on defendant's lot. In order to stop the water from draining down his driveway, defendant dug a ditch across the driveway so that water would flow west along the property line to a drainage ditch across the driveway and continue down the hill.

Plaintiff filed this action in January 2002, asserting five claims for relief. His first claim includes multiple allegations of interference with his easement over defendant's property resulting from the retaining wall, the steps and walkway, and the drainage ditch. In his second claim for relief, plaintiff alleges two counts of trespass, seeking damages and injunctive relief. His third claim for relief includes multiple allegations of interference with the drainage on his property as a result of defendant's improvements. The fourth claim alleges in two counts that defendant's installation and operation of exterior lighting created a nuisance. Finally, in his fifth claim for relief, plaintiff alleges intentional infliction of emotional distress for all of the above actions. In his answer, defendant denied plaintiff's claims and alleges a number of affirmative defenses. Defendant also alleges two counterclaims. In the first, he alleges that, because plaintiff was a member of the ACC and because he did not object to the location and position of defendant's house during construction, defendant "reasonably and justifiably" relied on being able to use the driveway on plaintiff's property for access to the upper area of lot 4 for parking. Second, defendant asserts a counterclaim for abuse of process, contending that plaintiff's action is an improper use of process and represents an act of revenge resulting from defendant's success in the earlier action.

The trial court found in favor of defendant as to plaintiff's claims and dismissed all of them with prejudice. It

also found in favor of defendant on defendant's first counterclaim based on "equitable reliance" and on defendant's second counterclaim for abuse of process, awarding defendant approximately $10,000 in attorney fees.

On appeal, plaintiff makes four assignments of error: (1) The trial court erred in granting defendant's request for an easement based on the doctrine of equitable reliance; (2) the trial court erred in requiring plaintiff to remove a boundary fence that prohibits defendant from using the easement; (3) the trial court erred in finding that plaintiff had abused civil process by filing his claims; and (4) the trial court erred in not requiring defendant to remove the retaining wall, which plaintiff claims interferes with his use of his easement. On cross-appeal, defendant makes two assignments of error: (1) The trial court erred in awarding only $10,000 when he incurred attorney fees and costs of $18,435; and (2) the court erred in not awarding defendant the full amount of his attorney fees and costs under ORS 20.105(1), which provides that a court shall award reasonable attorney fees upon a finding that there was no objectively reasonable basis for asserting a claim.[3]

■     We consider plaintiff's first and second assignments of error—that the trial court erred in granting defendant's request for an easement based on "equitable reliance." We note that the parties do not dispute that the developers vacated the original easement that served lot 4 before defendant purchased it. We understand defendant, in support of his first counterclaim, to argue that plaintiff is estopped from excluding defendant from using plaintiff's driveway for access to the upper area of defendant's lot because plaintiff failed to object to the placement of defendant's home during the planning and construction phase. Specifically, defendant contends in his first counterclaim that,

"[t]hroughout the time Defendant was in the process of building his house on Lot 4[,] Plaintiff was both a member

---

[3] It appears that the trial court's award of attorney fees was based on defendant prevailing on his counterclaims for abuse of process and for an easement based on equitable reliance. In addition to that award, defendant also contends that he is entitled to an award under ORS 20.190(2)(a)(B), ORS 20.105, and ORS 105.180.

of the [ACC] that had oversight authority over said construction, and Plaintiff lived in the house immediately adjacent to Defendant's lot. Throughout the process of building Defendant's home Plaintiff observed the construction and spoke with Defendant. During the construction of Defendant's home Plaintiff complained about the height of Defendant's proposed home, but Plaintiff never objected to the location of the home or the location of the surrounding improvements. By his words and actions Plaintiff expressly or by implication agreed to allow Defendant to utilize part of the common driveway on Plaintiff's property for access to Defendant's upper parking area and the main entrance to Defendant's home."

Defendant asserts that he

"reasonably and justifiably relied on Plaintiff's words and actions in designing and building his home on Lot 4, in * * * both the way and in the location that it was built, and in the way Defendant gained access to his upper parking area."

The court concluded that defendant was entitled to use the driveway based on "equitable reliance" because

"[Defendant] had been told he could use what was believed to be a common drive. In fact, the vacated easement slanted back onto lot four as shown in Ex. 108. He positioned his home with that in mind. In September of 2000, the surveyor worked from documents that established the easement still existed and showed the easement on Ex. 108. The vacation of the easement was done in a quitclaim deed from [the developers] to [plaintiff]. No evidence shows that the original documents creating the subdivision and easement were referenced, nor was the roadway maintenance agreement modified to show that it no longer existed. [Defendant] had a right to rely on the representations and to use the roadway."

We understand the trial court's reference to "equitable reliance" to refer to the doctrine of equitable estoppel.[4]

---

[4] According to 7 *Thompson on Real Property* § 60.03(b)(3) (David A. Thomas ed., 1994):

"A representative listing of the elements of equitable estoppel applied by courts to a dispute over easement rights, is (1) conduct, acts, language or silence amounting to a representation or concealment of material facts; (2) the party to be estopped either knows the facts or the circumstances require the facts to be

Although several cases in Oregon have appeared to recognize the application of that doctrine to establish an interest in real property,[5] our research has not revealed any case in which an Oregon appellate court has held that directly.[6] Our research of jurisdictions outside this state reveals a split of authority as to whether the doctrine is available for such a purpose.[7] For purposes of this case, we assume without deciding that such a doctrine exists in Oregon, but we find that, in any event, defendant has failed to prove equitable estoppel.

■■ In order to establish equitable estoppel, defendant must prove that plaintiff made a false representation to defendant with knowledge of facts of which defendant was ignorant, that plaintiff made the representation with the intent that defendant act on it, and that defendant reasonably acted upon it to his detriment. *Crain v. Siegel*, 151 Or App 567, 574, 950 P2d 382 (1997). In the present case, defendant does not contend that plaintiff made any affirmative

___

imputed to that party; (3) the truth about the facts must be unknown to the party claiming benefit of the estoppel at the time they were acted upon; (4) the conduct must occur with the intention or expectation that it will be acted upon, or under the circumstances that it is both natural and probable that it will be acted upon; (5) the conduct must be relied upon by the other party, and, thus relying, the other party must be led to act upon it; and (6) the other party must in fact act upon the conduct and change position for the worse."

(Footnote omitted.)

[5] *See, e.g., Corey v. United Savings Bank*, 52 Or App 263, 272, 628 P2d 739, *rev den*, 291 Or 368 (1981) (noting that an easement by reason of equitable estoppel is a sound theory); *see also Wayt v. Buerkel*, 128 Or App 222, 233, 875 P2d 499, *adh'd to as modified on recons*, 129 Or App 119, 876 P2d 868 (1994).

[6] Although our case law implies that we recognize the doctrine of easement by estoppel, those cases appear to be based on issues regarding irrevocable licenses. For example, in *Corey*, the court cited *Brown v. Eoff*, 271 Or 7, 530 P2d 49 (1975), in reaching its conclusion that the plaintiffs' contention that they had an easement over the defendant's property is a *sound theory*. *Corey*, 52 Or App at 272. *Brown* discusses the context in which a promise is rendered irrevocable by virtue of equitable estoppel. 271 Or at 10-12 (noting that "Oregon is one of a minority of jurisdictions which recognize the possibility of an irrevocable license"). Under Oregon law, an irrevocable license is created if "one * * * induces another to make significant expenditures for permanent improvements in reasonable reliance upon one's *promise* to allow a permanent use of land[.]" *Id.* at 11 (emphasis added). "Passive acquiescence" is not sufficient to establish an irrevocable license. *Heisley et al. v. Eastman et al.*, 102 Or 137, 201 P 872 (1921).

[7] *Compare Storms v. Tucker*, 579 SW2d 447 (Tex 1979) (discussing the doctrine of easement by estoppel in the context of estoppel by silence), *with Kitchen v. Kitchen*, 465 Mich 654, 641 NW2d 245 (2002) (rejecting doctrine of easement by estoppel, concluding that an interest in land cannot be established on the basis of estoppel).

representation that defendant could have an easement across his property. Rather, he apparently relies on the theory of estoppel by silence. Under that form of equitable estoppel, a person's failure to speak when it is the person's duty to speak may preclude that person from asserting a right that he or she otherwise would have had. *Knapp v. Daily*, 96 Or App 327, 332, 772 P2d 1363 (1989). However, the duty to speak does not arise until the party against whom estoppel is urged knows or should know that the failure to speak will likely mislead the other party to act to his or her detriment. *Id.*

Defendant first contends that plaintiff had a duty to object because the ACC, of which plaintiff was a member, had oversight authority for the construction of defendant's home. The record does not indicate that the plans submitted to the ACC expressly stated that defendant intended to use plaintiff's driveway for access to the upper area of defendant's lot for purposes of parking. However, we understand defendant to argue that the location and positioning of his home, as indicated in the plans provided to the ACC, put plaintiff on notice that defendant intended to use plaintiff's driveway and triggered a duty for plaintiff, as an ACC member, to object. Defendant's second contention is in a similar vein. He contends that, because plaintiff observed or should have observed him using the driveway and because he observed the construction of defendant's home, plaintiff is estopped from denying the existence of an easement across plaintiff's property.

Initially, we observe that, as a member of the ACC, plaintiff's duty was to ensure compliance with the CC&Rs. Insofar as this record is concerned, nothing in it persuades us that plaintiff, as an ACC member, had an affirmative duty to promote his own personal interests by protecting his property from those who might assert an easement over it. At most, the evidence shows that plaintiff may have had notice of defendant's intended use of plaintiff's property. Defendant also contends that plaintiff had a duty to object when plaintiff *observed the construction of defendant's home and the loca-*tion of surrounding improvements. He asserts that, throughout the construction of his home, defendant and his contractors used plaintiff's property without objection by plaintiff.

Again, we understand defendant's contention to be that, because plaintiff was aware of the construction of defendant's home, the location and positioning of the home provided plaintiff with knowledge that defendant would be using plaintiff's driveway. It is that knowledge that, according to defendant, triggered a duty to object and, because plaintiff did not object sooner, defendant was misled in believing that plaintiff agreed to his use of plaintiff's driveway.[8]

■   We are not persuaded that either set of circumstances created a legally cognizable duty on the part of plaintiff to object in order to avoid the application of the doctrine of equitable estoppel by silence. What defendant seeks to establish is a property interest in plaintiff's property. Nothing that plaintiff did or did not do would cause a reasonable person to believe that he had acquired an easement over plaintiff's property. *See Bash v. Fir Grove Cemeteries, Co.*, 282 Or 677, 687, 581 P2d 75 (1978). We also note that Oregon case law on irrevocable licenses is clear that mere acquiescence in the use of one's land without an affirmative promise or representation does not suffice to create an irrevocable license to use a property owner's property. We perceive no reason why the law should be applied in a different manner when the establishment of an easement by equitable estoppel is sought. It follows that the trial court erred in holding that defendant had established an easement across plaintiff's property based on "equitable reliance." Because the trial court's ruling requiring plaintiff to remove his boundary fence was predicated on its determination that defendant had an easement based on equitable reliance, we also reverse the ruling requiring the removal of the boundary fence.

■   We turn next to plaintiff's third assignment of error, in which he asserts that the trial court erred when it found an abuse of process. "Abuse of process" is the perversion of a process that is regular on its face to a purpose for which the process is not intended. *Larsen v. Credit Bureau*, 279 Or 405, 408, 568 P2d 657 (1977); *Clausen v. Carstens*, 83 Or App 112, 118, 730 P2d 604 (1986). We have described the legal theory

---

[8] The evidence is in conflict in that regard. However, the evidence suggests that defendant believed he could use plaintiff's driveway because of what his real estate agent told him and not because of his reliance on plaintiff's silence.

as "the use of the process as a club by which to extort something unrelated to the process from the other party." *Clausen*, 83 Or App at 118 (citation omitted). As such, to plead a claim for abuse of process, a plaintiff must allege some ulterior purpose, unrelated to the process, and a willful act in the use of the process that is not proper in the regular conduct of the proceeding.[9] *Larsen*, 279 Or at 408; *see also Yanney v. Koehler*, 147 Or App 269, 276, 935 P2d 1235, *rev den*, 325 Or 368 (1997).

■  To fulfill that requirement, defendant asserts in his second counterclaim that plaintiff brought the present action as an act of revenge for events relating to the earlier action to enforce the two-story height restriction on defendant's home.[10] We understand defendant's counterclaim for abuse of process to rely principally on plaintiff's assertion of his property interest in his driveway, in addition to other allegations unrelated to plaintiff's claims. Because we have determined that plaintiff had a right to defend against defendant's efforts seeking to establish an easement over his property, plaintiff's actions could not constitute an abuse of process. *See, e.g., Hartley v. State Water Resources Dept.*, 77 Or App 517, 522, 713 P2d 1060, *rev den*, 301 Or 78 (1986) (holding that malice by itself is not a sufficient basis for a claim for abuse of

---

[9] We note that, although defendant alleges the abuse of process claim as a counterclaim in his answer, the parties do not raise an issue regarding *former* ORS 30.895(3) (2001), *renumbered as* ORS 31.230(3) (2003), which provides:

"A claim for damages for wrongful use of a civil proceeding shall be brought in an original action after the proceeding which is the subject matter of the claim is concluded."

[10] In defendant's second counterclaim, he alleges:

"Plaintiff earlier sued Defendant in Curry County Circuit Court * * * to enforce a height restriction agreement Plaintiff had with his predecessors in interest * * *. The Court in that earlier case found in favor of Defendant, and ever since Plaintiff has demonstrated animosity toward Defendant and has sought revenge. Since the conclusion of the earlier lawsuit, * * * Plaintiff has demonstrated animosity toward Defendant in the following ways:

"* * * * *

"Plaintiff has brought the action herein for the ulterior purpose, of revenge and to cause Defendant unnecessary financial and emotional stress, unrelated to this action, and Plaintiff has performed a willful[,] vindictive[,] and vexatious act in the use of this process that is not proper in the regular conduct of this proceeding."

process). Accordingly, we reverse the trial court's judgment on the abuse of process counterclaim.

In his fourth assignment of error, plaintiff asserts that the trial court erred when it refused to require defendant to remove his retaining wall from plaintiff's easement that crosses defendant's property. The retaining wall is on defendant's property. An action for an interference with easement rights requires a showing of a "substantial" or "unreasonable" interference with the grantee's right to enjoy the easement. *Landauer v. Steelman*, 275 Or 135, 141, 549 P2d 1256 (1976); *Marsh v. Pullen*, 50 Or App 405, 408-09, 623 P2d 1078, *rev den*, 290 Or 853 (1981). In order to show a substantial interference, plaintiff must show that his "use was actually damaged by the alleged interference." *Vance v. Ford*, 187 Or App 412, 422, 67 P3d 412 (2003) (internal quotation marks omitted). An easement owner is limited to those uses of the easement that are reasonably necessary for the easement's intended purpose. *Clark v. Kuhn*, 171 Or App 29, 33, 15 P3d 37 (2000). The owner of the servient estate also has a right to make reasonable use of his or her land, and his or her rights and those of the dominant tenant are mutually limiting. *Id.*

The retaining wall in dispute protrudes six feet at its deepest point into the 20-foot easement area. The trial court explained:

"The driveway has a roadway width by the retaining wall of about 14 feet. It is located as far to the west in the easement as possible. The curve in the driveway of which [plaintiff] complains is entirely located on his property where there are no easement boundaries. A line in the centerline of the drive in the top part of the easement and a line in the centerline of the driveway after the curve intersect at an angle of about 130 degrees. If the driveway were shifted as far east in the easement as possible, the angle of intersect would be approximately two degrees less or 128 degrees. When superimposed on each other, the drawings show that about 3 feet of the main retaining wall and the wing wall are in the easement. The stairs are not in the easement. Part of the concrete walkway is in the easement. The deepest encroachment into the easement is about 6 feet at the tip of the wing wall and some of the concrete walkway."

Plaintiff argues:

"The facts presented show that Defendant did not comply with any of the CC & R's required regarding the retaining wall. The intrusion into the easement caused water to run in the road instead of a ditch along side. Defendant used the excess water flow he himself had caused as a reason for the spite trench across the road. No justification for the encroaching retaining wall was or could be shown. The court should have ordered its removal."

Although plaintiff contended below that the drainage ditch interfered with his use of the easement, he does not assign as error the trial court's refusal to require defendant to remove the ditch. Therefore, on appeal we consider only whether and to what extent the retaining wall interferes with plaintiff's use and enjoyment of the easement as described above. Defendant, however, contends that the encroachment does not substantially or unreasonably interfere with plaintiff's ability to use and enjoy the easement, and that the evidence supports his argument. At trial, plaintiff conceded that he was able to drive his vehicles around the curve of the driveway and past defendant's retaining wall. Plaintiff contended, however, that a larger vehicle like a motor home would be unlikely to drive past the retaining wall, which would make the home less valuable to future purchasers as a retirement home. We find that argument somewhat speculative. Plaintiff also testified that, because of defendant's retaining wall, his garbage disposal service stopped picking up his garbage at his door and required plaintiff to leave his trash cans at the end of the driveway. However, an employee of the garbage disposal company testified at trial that safety concerns were the reason for the company's refusal to use the driveway for pickup, noting that there is insufficient room for a company truck to turn around safely on the slope of the driveway. We conclude based on the evidence before us that defendant's retaining wall and walkway do not prevent plaintiff's ingress, egress, or use of the driveway for utility purposes. We therefore affirm the trial court's ruling in that regard.

In light of the above rulings, the attorney fee and cost award to defendant must also be vacated. ORS 20.220(3). As a result, defendant's cross-appeal is moot.

On appeal, provisions of judgment in favor of defendant on defendant's abuse of process claim, awarding an easement across plaintiff's property to defendant, and requiring plaintiff to remove the boundary fence on his property reversed; award of attorney fees to defendant vacated; otherwise affirmed. Cross-appeal dismissed. Remanded for entry of judgment consistent with this opinion.