Argued March 6, affirmed April 24, 1968

ROUSE ET AL, *Appellants, v.* ROY L. HOUCK
SONS' CORPORATION, *Respondent.*

439 P. 2d 856

*Gordon G. Carlson,* Roseburg, argued the cause and filed briefs for appellants.

*Vernon L. Burda,* Salem, argued the cause and filed a brief for respondent.

Before PERRY, Chief Justice, and O'CONNELL, GOODWIN, DENECKE and LANGTRY, Justices.

GOODWIN, J.

Plaintiffs, claiming to be the assignees of a license to quarry and remove rock, appeal a judgment denying recovery in an action for damages for "conversion"[1] against a construction company which quarried and removed rock under a subsequent license from the landowner.

---

[1] Conversion, the wrongful appropriation of personal property, is not an accurate description of the defendant's alleged inter-

The assignment of error challenges the granting of a judgment notwithstanding the verdict after a jury had awarded the plaintiffs general and punitive damages against Roy L. Houck Sons' Corporation.

The controversy grew out of an instrument apparently prepared by the plaintiffs' assignors and captioned "option contract." The document reads as follows:

## "OPTION CONTRACT

"THIS AGREEMENT made this __3__ day of Sept. , 1964, between __Jimmie A. King__ and __Betty J. King__ , hereinafter known as the owners, and __Dewey Strong__ and __Leonard Boekelman__ , hereinafter known as the Buyers,

"WITNESSETH:

"In consideration of the sum of __ten and no hundredths dollars__ Dollars and other valuable consideration hereinafter provided for, the owners hereby give the buyers the sole and exclusive right to test, remove, quarry, crush any and all rock or gravel material upon the following described real property, situated in the State of Oregon, County of Coos, to-wit:

"* * * * * [Legal description omitted.]

"This sole and exclusive right is granted for a period of time not to exceed __6 months from date above__ . It is understood and agreed that in addition to the consideration hereinbefore provided for, the Buyers shall pay the owners the sum of

ference with the plaintiffs' enjoyment of an interest in land in this case. But, since the form of action was not an issue, we have not considered pleading questions that might have been raised. See Faust, *Distinction Between Conversion and Trespass to Chattel*, 37 Or L Rev 256 (1958).

<u>17 ½ cents per yard for rock thru crusher</u>

6 cents per yard for free rock

per yard for all rock or gravel material removed from the above described property. *For a period of 5 year Jimmie King*

"In the event that Buyers should discontinue the operation of the quarry herein provided or fail to remove any rock or gravel or material from the premises for a period of one year, this agreement shall terminate and be null and void.

"Owners hereby grant Buyers the right of ingress and egress and road construction over the above premises to accomplish the rights granted herein., providing that all existing roads, cattle guards etc. are kept in as good shape or condition as they are at present time.

"IN WITNESS WHEREOF we have hereunto set our hands and seals the day and year first above written. . . . .

"* * * * * [Signatures omitted.]

"[Note: Blank spaces in the above form were filled in by typewritten words and figures. Words in italics were handwritten in ink.]"

On September 3, 1964, King executed the foregoing memorandum with the plaintiffs' assignors. At some later time, at the request of the plaintiffs' assignors, King wrote in his own hand the words "for a period of 5 year Jimmie King" on the margin of the document.

On January 10, 1966, King wrote a letter to the assignors advising them that any option created by the agreement of September 3, 1964, had not been exercised, and that he accordingly considered it expired. On April 3, 1966, King entered into an option for a lease with Houck. Houck shortly thereafter began removing rock, and a lease was signed on June 3, 1966.

Plaintiffs assert that the agreement of September 3, 1964, had given the plaintiffs' assignors an option for six months to commence operations to quarry and remove rock from the King land. Once their operations had commenced, they argue, the agreement granted them the exclusive right for five years to remove rock (provided the work was not suspended for a period of more than one year). Plaintiffs contend that their proof established that they had commenced all work necessary to cause the so-called option to ripen into an irrevocable servitude upon King's land.

It was King's position that the agreement of September 3, 1964, created no exclusive or irrevocable rights extending beyond the six-month period stated therein, but that it did give buyers an option to enter a five-year lease. Since no such lease was entered during the six-month period, King argues that all rights under the option contract expired at the conclusion of six months.

■ We believe that both parties intended to create an exclusive option in the assignors for a period of six months, but that the agreement failed to include terms essential to the creation of such an option. The most conspicuous omission is the manner in which the option was to be exercised. Also missing are many important terms of any lease that might be drawn. Because of these inadequacies, the agreement cannot be enforced as an option. To treat it as an option would bind one or both of the parties to terms and conditions never agreed upon.

■ Since it is clear, however, that King intended to give the "optionees" a five-year right to remove rock under some unspecified circumstances, the agreement can be construed as creating a license to remove rock.

A license consists of a landowner's consent to the use of his property by another in a way which would otherwise be wrongful. See 2 American Law of Property §§ 8.109–8.110 (A J Casner ed 1952); Restatement of Property § 512 (1944). Licenses are, within limitations, revocable at will. 2 American Law of Property § 8.112; Restatement of Property § 519.

■ A licensee under such a license who has made expenditures of capital or labor in the exercise of his license in reasonable reliance upon representations by the licensor as to the duration of the license is privileged to continue the use permitted by the license to the extent reasonably necessary to realize upon his expenditures. Restatement of Property § 519(4). See *Anderson v. Moothart,* 198 Or 354, 256 P2d 257 (1953); and Comment, 31 Or L Rev 242 (1952).

Plaintiffs argue that expenditures by their assignors in exploring for rock and building roads on the King property should activate the above rule of estoppel to make their license irrevocable. The evidence, however, does not support plaintiffs' present contention that they or their predecessors in interest actually made substantial expenditures in reliance upon a reasonable or any belief that they had an exclusive right for more than six months to remove the rock deposits from King's land.

The evidence tended to show that the roadwork by the plaintiffs' predecessors was performed largely in aid of rock-removal operations they were then conducting upon other land adjacent to King's. It was convenient to cross King's land to transport rock from the neighboring land to a public road, and it was expected that King would grant a right of way for hauling the rock across his land.

 Assuming, without deciding, that reliance on a five-year term might have been reasonable, the evidence does not furnish a basis for finding that road-building expenses if any were related to the object of removing rock from King's land. The evidence concerning the roadwork was so unclear that a jury could only have engaged in speculation. There was, therefore, a failure of proof on the facts necessary to create an estoppel. Accordingly, the trial judge was correct in holding as a matter of law that the license was not shown to have become irrevocable. See *Anderson v. Moothart,* supra. Plaintiffs' rights under the license, therefore, came to an end when King wrote on January 10, 1966, that the "optionees" had no further rights to his rock.

 Houck has argued that the license, if any, given plaintiffs' predecessors was personal to them and was not assignable. While we need not pass upon the question in this case, it might be well to note that a license can be assignable if the parties so intend. See *Strandholm v. Barbey,* 145 Or 427, 26 P2d 46 (1934) (by implication); 2 American Law of Property § 8.122 (A J Casner ed 1952); Restatement of Property § 517 (1944).

 Where a license is created for commercial purposes, it should normally be inferred that the parties intended it to be assignable, unless the evidence proved the contrary intent. See 2 American Law of Property § 8.122, supra. In this case, however, assignability was not a critical issue, because any interest the plaintiffs or their predecessors possessed was revoked. The court properly entered judgment notwithstanding the verdict.

Affirmed.