Argued and submitted November 28, 1988, affirmed May 3, 1989

KNAPP et ux,
*Appellants,*

*v.*

DAILY et al,
*Respondents.*

(L86-2234; CA A47546)

772 P2d 1363

Rod R. Johnson, Roseburg, argued the cause and filed the briefs for appellants.

William C. Wolke, Roseburg, argued the cause for respondents. With him on the brief was Wolke & Mays, Roseburg.

Before Graber, Presiding Judge, and Riggs and Edmonds,* Judges.

RIGGS, J.

---

* Edmonds, J., *vice* Warden, J., retired.

## RIGGS, J.

Plaintiffs appeal from a judgment denying their claim for the cost of one-half of a fence built between their property and that of defendants and awarding defendants damages for timber trespass. We affirm.

Plaintiffs replaced a one mile long livestock fence that separated plaintiffs' and defendants' ranches. The old fence, which had been standing for over 40 years, meandered back and forth across the straight property line described in the deeds to the two parcels. During the 12 years that defendants owned the neighboring property before the new fence was built, both parties allowed their livestock to graze up to the meandering fence and treated the fence as though it described the actual property line.

Soon after plaintiffs started replacing the fence, defendant Bruce Daily discovered the operation while walking on his property. Daily saw that the new fence did not follow the line of the old fence. While at the construction site, he met and talked with plaintiff McClellan Knapp. Knapp said that he intended to replace the entire one-mile fence and to bill Daily for one half of the cost. Daily had little comment and made no attempt to dissuade Knapp from that course of action.

Plaintiffs brought this action seeking reimbursment for the cost of one-half of the new fence[1] under ORS 96.010,[2] which provides:

> "Whenever there is a fence that is in all respects such as a good husbandman ought to keep on the line of any land, and the person owning or holding a lease for one or more years of the land adjoining thereto makes or has an inclosure on the opposite side of such fence, so that such fence answers the purpose of inclosing the latter's field, meadow, lot or other inclosure, the latter shall pay the owner of such fence already erected, one-half of the value of so much thereof as serves as a partition fence, such value to be determined by the parties. If

---

[1] The amount of the prayer is for the cost of the less expensive one-half mile section. The fence consists of two one-half mile sections that meet at a corner.

[2] In a second count, plaintiffs also sought recovery under ORS 96.030, but that claim is not presented on appeal.

they cannot agree, the party aggrieved and entitled to compensation for constructing or repairing the partition fence shall be entitled to recover from the other in a civil action the value of one-half of such fence or half the value of repairing it before any court having competent jurisdiction in the name of and for the use of the owner or lessee of such fence, together with disbursements and costs of action. The prevailing party shall also recover attorney fees at trial and on appeal, to be adjudged by the court."

Arguing that the new fence was not built "on the line" between the two properties as required by the statute, defendants claimed title by adverse possession to the property on their side of the old fence and counterclaimed for the timber trespass committed by plaintiffs in clearing the land for erection of the straight fence. The trial court ruled in favor of defendants, awarding treble damages for timber trespass under ORS 105.810.

On appeal, plaintiffs assign as error the trial court's ruling that defendants are not responsible to help pay for the fence under ORS 96.010 because defendants have acquired title by adverse possession to all of the land on their side of the old fence. Plaintiffs also challenge the court's implicit rejection of their argument that defendants in any event are estopped from refusing to help pay for the fence. In this action at law, we accord the trial court's findings as to the adverse possession claim the force and effect of a verdict by a jury and review the record to determine whether there is any evidence to support them. *Du Val et ux v. Miller,* 208 Or 176, 179, 300 P2d 416 (1956); *State ex rel Highway Div. v. Rosenbalm,* 31 Or App 717, 719, 571 P2d 537 (1977), *rev den* 281 Or 431 (1978); *see also Allison v. Shepherd,* 285 Or 447, 454, 591 P2d 735 (1979).

■ To establish title by adverse possession, the claimant must prove, by clear and convincing evidence, actual, open, notorious, hostile, continuous and exclusive possession of the property under color of title or a claim of right for the statutory period of 10 years. ORS 12.050; *Rise v. Steckel,* 59 Or App 675, 686, 652 P2d 364, *rev den* 294 Or 212 (1982). "Hostile," as that word is used in the context of adverse possession, means simply that the claimant possessed the property intending to be its owner and not in subordination to the true owner. *Mascall v. Murray,* 76 Or 637, 643-44, 149 P 517 (1915).

Possession of realty under a mistaken belief of ownership normally satisfies the element of hostility without the need for further inquiry into the claimant's subjective intent, but the belief must result from a "pure mistake," rather than a mistake based upon a "conscious doubt."[3] *Lee v. Hansen,* 282 Or 371, 375, 578 P2d 784 (1978); *Norgard et al v. Busher et ux, supra,* n 3. Plaintiffs argue that the element of hostility has not been proved in this case, because defendants must have had a "conscious doubt" as to the location of the property line. The trial court found, however, that defendants believed the fence to represent the actual boundary line. That finding is supported by evidence, and we may not disturb it on appeal. ORCP 62F. *Campbell v. Karb,* 303 Or 592, 596, 740 P2d 750 (1987). Because defendants possessed the land under a belief of ownership arising from a "pure mistake," the element of hostility is presumed satisfied.[4] We affirm the trial court's determination that defendants acquired title by adverse possession to all of the property on their side of the old fence.

■   Defendants having obtained title to portions of plaintiffs' land, the new fence constructed on the line described in the deed was not erected "on the line of any land," as required by ORS 96.010. Defendants therefore may not be held to liability under that statute.[5]

■ ■   Plaintiffs argue in the alternative that, even if the

---

[3] Plaintiffs urge us to carve out an exception to the "pure mistake" rule that would require an inquiry into the claimant's subjective intent in any adverse possession case involving a fence that meanders back and forth across a straight property line. We decline plaintiffs' invitation. They have presented no compelling reason why we should depart in this case from the general principle underlying the pure mistake rule: The objective manifestation of intent derived from the claimant's physical use of the property is regarded as overriding the more artificial manifestation of intent derived from the deed. *See Norgard et al v. Busher et ux,* 220 Or 297, 302, 349 P2d 490 (1960); Kelley, "Property—1960 Oregon Survey," 40 Or L Rev 233, 234 (1961).

[4] In *Whitley v. Jacobs,* 278 Or 541, 564 P2d 1057 (1977), another case involving an irregular fence, the plaintiff maintained at trial that the irregular fence described the actual boundary, but the defendants presented evidence that the plaintiff had on previous occasions acknowledged that the fence was not on the property line. The Supreme Court left undisturbed the trial court's finding that pure mistake had not been established on those facts.

[5] Defendants assert that ORS 96.010 does not apply to this action at all, for the reason that the fence here was not "already erected," and that ORS 96.020 and ORS 96.030 provide the only procedure to obtain contribution when an adjoining landowner repairs or replaces a partition fence. Because of our disposition of plaintiffs' claim under ORS 96.010, we need not address that question.

new fence crosses land belonging to defendants, defendants should be estopped to deny liability because of their failure to object to the placement of the fence before it was completed. Under the doctrine of equitable estoppel, a person's acts or conduct, or silence when it was the person's duty to speak, may preclude the person from asserting a right that the person otherwise would have had. *Seguin et al. v. Maloney-Chambers,* 198 Or 272, 287, 253 P2d 252, 256 P2d 514 (1953). The duty to speak does not arise unless the party against whom the estoppel is urged knew or should have known that a failure to speak would probably mislead the other party to act to his or her detriment. *Seguin et al. v. Maloney-Chambers, supra.* There is no evidence in this case that defendant Daily knew that his failure to object to the placement of the fence would mislead plaintiffs.

Affirmed.