Argued and submitted July 26, affirmed November 2, 2011

Henry TIEU,
*Plaintiff-Appellant,*

*v.*

Carl D. MORGAN
and Francine A. Morgan,
*Defendants-Respondents.*

Multnomah County Circuit Court
081014035; A144733

265 P3d 98

David R. Nepom argued the cause and filed the briefs for appellant.

Peter D. Mohr argued the cause for respondents. With him on the brief were Tonkon Torp LLP, and Barbee Lyon.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Hadlock, Judge.*

HADLOCK, J.

---

* Hadlock, J., *vice* Edmonds, S. J.

**HADLOCK, J.**

The parties dispute ownership of a strip of land that runs parallel to defendants' driveway. Plaintiff, who owns residential property adjoining that strip of land, filed suit seeking (1) a declaration that he owns the disputed strip and (2) an injunction prohibiting defendants from trespassing on that property. Defendants counterclaimed, asserting that they acquired the disputed strip through adverse possession, and subsequently moved for summary judgment on that counterclaim. The trial court granted defendants' motion and entered a judgment declaring that defendants had acquired the strip through adverse possession. Plaintiff appeals, and we affirm.

Most of the facts relevant to defendants' summary judgment motion are undisputed. Where the parties disagree about the facts, we note that dispute and consider the evidence in the light most favorable to plaintiff, the nonmoving party. ORCP 47 C; *Abell v. Shelton*, 224 Or App 259, 263, 197 P3d 579 (2008).

The two parcels subject to this appeal are adjoining residential tax lots in a Portland subdivision. Tax lot 3100 is rectangular, with its north side fronting Southeast Boise Street. Tax lot 3200 is a flag lot that is situated largely south of lot 3100; its driveway (the "flagpole") runs north from the main portion of the lot (the "flag") to Southeast Boise Street, parallel to the eastern edge of lot 3100. The disputed three-foot-wide strip lies between lot 3200's driveway and lot 3100. Defendants own lot 3200. Plaintiff owns lot 3100 and also is the record owner of the disputed strip.[1]

A north-south stretch of fence on plaintiff's property runs along the western boundary of the disputed strip, parallel to defendants' driveway. The fence starts roughly halfway down the driveway from Southeast Boise Street, running south, then turns 45 degrees to the southwest, cutting off the southeast corner of lot 3100, then makes another 45-degree turn before continuing west, roughly following the

---

[1] A not-to-scale diagram of the properties is attached as an Appendix to this opinion; the diagram is a slightly modified version of an exhibit that was attached to the general judgment.

east-west boundary between lots 3100 and 3200. The diagonal portion of the fence that cuts the corner of lot 3100 includes a gate wide enough to accommodate a boat trailer.[2] As noted, the disputed three-foot-wide strip lies between defendants' driveway and the north-south fence on lot 3100; its practical effect is to widen the "flagpole" portion of lot 3200.[3]

The fencing that separates the two properties has existed for decades. As of 1984, the two lots were owned by Robert Stevens, who installed most of the fencing that year, including about half of the north-south stretch located west of lot 3200's driveway. In 1994, Robert Stevens sold lot 3200 to his son, James Stevens, believing that the deed he conveyed to James included all property on the east side of a north-south line defined by that portion of the fence, *i.e.*, the disputed strip. Although he never specifically discussed the issue with his father, James also believed that his purchase of the flag lot included the disputed strip along his driveway. James explained that he had "no reason to know—to think [that the fence] would be in the wrong location."

During the four years that James owned the flag lot, he granted Robert permission to occasionally use James's driveway and the disputed strip, so that Robert could drive a large vehicle and boat trailer through the diagonal gate into Robert's back yard. In 1996, James installed a sewer line in the center of the disputed strip, running all the way from Southeast Boise Street to the house on lot 3200. When James later put lot 3200 on the market, he advertised it as having a "fully fenced yard," based on his belief that his ownership included the disputed strip.

---

[2] According to deeds in the record, the east-west portion of the fence does not exactly follow the east-west property line separating lot 3100 from the "flag" portion of lot 3200. That discrepancy is not at issue in this case. In addition, we note that the parties have settled their dispute with respect to the small triangle of property on the east side of the diagonal gate, so the boundaries associated with that triangle also are not at issue on appeal.

[3] Lot 3200 also is fenced on its south and east borders, and on the west border of the "flag" portion of the lot. The locations of those fences are not relevant to this appeal. When we discuss "the fence" in this opinion, we generally are referring only to the north-south fence that parallels the west side of defendants' driveway, separating it and the disputed strip from plaintiff's property.

James sold lot 3200 to defendants in 1998. The lot was not surveyed in conjunction with that sale; nor did the parties to the sale discuss the lot's recorded boundaries, review paperwork or maps, or perform any investigation specifically related to that subject.

Defendants have made use of the disputed strip since they purchased lot 3200. Defendant Francine Morgan runs a daycare business from her home, and parents regularly use the disputed strip when dropping off and picking up their children. In 1999, defendants extended the fence paralleling the strip north by roughly 40 feet, choosing not to extend the fence all the way to Southeast Boise Street after Robert suggested that they leave that area unfenced to accommodate maneuvering large vehicles in and out of their driveways. Defendants have laid gravel and bark dust on the disputed strip a number of times and have maintained the fence by replacing posts and fence boards. While Robert still owned lot 3100, he specifically asked defendants' permission each time he wanted to use the disputed strip to access or move his boat, and defendants granted that permission.

Plaintiff bought lot 3100 from Robert in early 2006. Before purchasing the property, plaintiff had it surveyed and learned that the north-south fence was not located on the deeded boundary between lots 3100 and 3200. A survey pin marking the recorded boundary was placed at that time. Plaintiff claims that he told defendant Francine Morgan soon after the survey was completed that he planned to move the fence to the deeded property line within two years. According to plaintiff, Francine neither disputed plaintiff's right to move the fence nor claimed ownership of land between the survey marker and the fence. Defendants deny that such a conversation occurred.

In 2008, plaintiff attempted to remove the north-south portion of the fence. After defendants protested, plaintiff initiated this action, seeking a declaration that he owned the disputed strip. As noted, defendants asserted in a counterclaim that they had acquired the strip through adverse possession. The trial court ultimately granted summary judgment to defendants, ruling that the undisputed facts

established that defendants had acquired the disputed strip through adverse possession.

On appeal, plaintiff first argues that the trial court erred in granting defendants' summary judgment motion because the facts related to "many of the adverse possession elements" were in dispute. As explained below, we disagree. Considering the record in the light most favorable to plaintiff, we conclude that defendants were entitled to summary judgment because the record showed that there was no genuine issue as to any material fact and that defendants were entitled to prevail as a matter of law.

ORS 105.620 codifies the common-law elements of adverse possession, requiring a claimant to prove by clear and convincing evidence that the claimant or the claimant's predecessors in interest maintained actual, open, notorious, exclusive, hostile, and continuous possession of the property for ten years.[4] In addition to those common-law elements, the statute also requires the claimant to have had an honest belief of actual ownership when he or she entered into possession of the property.

Plaintiff makes arguments related to each of the statutory elements, first claiming that defendants did not establish actual, open, notorious, exclusive, or continuous possession of the entire disputed strip. We recently summarized what proof is required to satisfy those elements of an adverse-possession claim:

> "The element of actual use is satisfied if a claimant established a use of the land that would be made by an owner of the same type of land, taking into account the uses for which the land is suited. To establish a use that is open and notorious, plaintiffs must prove that their possession is of such a character as to afford the owner the means of knowing it, and of the claim. The exclusivity of the use also depends on how a reasonable owner would or would not share the property with others in like circumstances. A use is continuous if it is constant and not intermittent. The

---

[4] The statute was enacted in 1989 and applies to all adverse-possession claims, like this one, that vested after January 1, 1990. Or Laws 1991, ch 109, § 3; *Lieberfreund v. Gregory*, 206 Or App 484, 490, 136 P3d 1207 (2006).

> required constancy of use, again, is determined by the kind
> of use that would be expected of such land."

*Stiles v. Godsey*, 233 Or App 119, 126, 225 P3d 81 (2009)
(internal quotations and citations omitted).

Here, the land in question is a three-foot-wide strip, covered mostly with gravel or bark dust, adjacent to a narrow driveway. Defendants and their predecessor have used the strip as an extension of that driveway since 1994, both to accommodate wide vehicles and to provide additional loading room for defendant Francine Morgan's daycare clients. That use is consistent with ownership and with the land's character. Moreover, that use was "open" and "notorious," particularly when considered together with James's act of locating his sewer line on the strip and, later, defendants' maintenance of and improvements to the fence. Finally, defendants and their predecessor used the strip continuously from 1994 (when James bought the lot) to at least 2006 (when plaintiff bought lot 3100 from Robert), *i.e.*, for longer than the statutory 10-year adverse-possession period. Thus, the undisputed facts establish defendants' actual, open, notorious, exclusive, and continuous use of the property.

Plaintiff's contrary argument rests on the fact that the disputed strip is not completely separated from his residential lot by a fence; he emphasizes that the fence at issue does not extend all the way to Southeast Boise Street, but starts partway down the driveway. Plaintiff is correct when he suggests that the existence of fencing can be important to an adverse-possession claim. *See Norgard et al v. Busher et ux*, 220 Or 297, 306, 349 P2d 490 (1960) (describing how a fence can help establish elements of claim). But a fence's existence can support an adverse-possession claim even if the fence does not completely separate disputed property from other land. Instead, what matters is whether the partial fencing serves to visibly delineate the claimed area by indicating how it is set off from other property. *Id.* at 306-07; *see also Lieberfreund v. Gregory*, 206 Or App 484, 493, 136 P3d 1207 (2006) (existence of driveway on disputed strip of property supported the plaintiff's adverse-possession claim even though the driveway did not extend down the entire strip; the driveway's location was consistent with the use that one

would expect if the plaintiff's predecessors had held title to the strip). Here, even though the fence does not extend to the street, it adequately defines the entire disputed strip, indicating that it is separate from the land that abuts it to the west.

Plaintiff also contends that defendants' use of the disputed strip was not "exclusive" because Robert sometimes used the property even after the fence was built. But adverse-possession claimants are allowed "the freedom to allow others to occasionally use their property, in the manner that neighbors are wont to do, without thereby abandoning their claim * * *." *Harrell v. Tilley*, 201 Or App 464, 477, 119 P3d 251 (2005). In this case, Robert asked permission of defendants and their predecessors each time that he used the disputed strip; that permissive use was consistent with defendants' ownership of the land and does not defeat their claim to it.

We also reject plaintiff's argument that defendants' use of the disputed strip was not "hostile" because, he claims, defendants had a conscious doubt regarding the property line. Under ORS 105.620(2)(a), a claimant "maintains 'hostile possession' of property if the possession is under claim of right or with color of title." A "claim of right" may be established through proof of "an honest but mistaken belief of ownership, resulting, for example, from a mistake as to the correct location of a boundary." *Stiles*, 233 Or App at 127; *Hoffman v. Freeman Land and Timber, LLC.*, 329 Or 554, 561 n 4, 994 P2d 106 (1999). The mistaken belief must be a "pure" mistake, however, and not one based upon "conscious doubt" about the true boundary. *Faulconer v. Williams*, 327 Or 381, 390-91, 964 P2d 246 (1998). Furthermore, ORS 105.620(1)(b) requires that the claimants (or their predecessors) have had an "honest belief" of actual ownership that (1) continued through the vesting period, (2) had an objective basis, and (3) was reasonable under the circumstances.

In *Mid-Valley Resources, Inc. v. Engelson*, 170 Or App 255, 13 P3d 118 (2000), *rev den*, 332 Or 137 (2001), we concluded that the defendants had failed to establish pure mistake about the location of a boundary line because one of the defendants had a conscious doubt on that subject. That

*Mid-Valley* defendant had testified that she had not known where the property line was when she was a child, and she still did not know at the time of trial whether a particular fence was located on that boundary. *Id.* at 261. That defendant's uncertainty about the property line's location defeated the defendants' adverse-possession claim.

Here, by contrast, the undisputed evidence clearly establishes that defendants and their predecessor, James, always believed that the fence marked the north-south line between lots 3200 and 3100. James assumed when he bought lot 3200 in 1994 that the fence was on the property line, and he perpetuated that belief in defendants by telling them, when they bought the property, that it was "fully fenced." Robert, then the record owner of the disputed strip, confirmed those mistaken beliefs when he did not object to installation of the sewer line, to defendants' use of the strip, or to defendants' extension of the fence. No evidence in the record supports plaintiff's assertion that defendants had a "conscious doubt" about whether the fence was actually located on the line separating their property from plaintiff's. Defendants did suggest in their depositions that they had not given much thought to the property line's location until the dispute arose with plaintiff. Read in context, however, those statements simply confirm defendants' *certainty* that the property line was the same as the fence line; the statements do not indicate that defendants had any conscious doubt as to the boundary's location.

Moreover, no evidence calls into question the reasonableness of defendants' belief that they owned the disputed strip. That strip of land is small in relation to the size of lots 3200 and 3100, it regularly has been used as an extension to the width of an existing driveway, it is well suited to that purpose, and it is partly fenced off from plaintiff's property. Under the circumstances, defendants' belief that they owned the disputed strip was reasonable.[5]

---

[5] We disagree with plaintiff's assertion that, because the angled gate "obvious[ly]" did not match the plat map, defendants and James were on notice that the entire fence did not follow the true boundary. The small triangle of property bounded by the gate is not at issue here, and under the circumstances of this case, a dispute about one small piece of oddly shaped property has no implications for the reasonableness of defendants' belief that they owned the rectangular strip adjacent to their driveway.

In sum, the undisputed evidence establishes clearly and convincingly that defendants and their predecessor, James, had an "honest belief" that the disputed strip was part of lot 3200 and that they continuously maintained actual, open, notorious, exclusive, and hostile possession of that strip for well over 10 years, from 1994 at least until plaintiff bought lot 3100 in 2006.[6] We conclude that defendants' adverse-possession claim to the disputed strip vested in 2004, giving them title and extinguishing any claim that plaintiff might otherwise have had to that land. *See Evans v. Hogue*, 296 Or 745, 752, 681 P2d 1133 (1984) ("one who has adversely possessed land for the requisite number of years gains ownership rights to the land of a status equal to deeded title"); *Pubols v. Jacobsen*, 91 Or 256, 261, 177 P 629 (1919) (title secured by adverse possession is "perfect title").

Plaintiff contends, nonetheless, that the doctrine of equitable estoppel should have precluded entry of summary judgment in defendants' favor. He claims that, after he had the property surveyed in association with his 2006 purchase, he told defendant Francine Morgan that the fence was not on the property line and also told her that he planned to move the fence in two years. Plaintiff argues that because defendants did not expressly assert ownership of the disputed strip at that point, they are now estopped from claiming ownership of the property.

We reject plaintiff's contention that defendants' silence during encounters that allegedly occurred *after* defendants acquired title to the disputed strip through adverse possession in 2004 could estop them from asserting that ownership interest. *Cf. Fitts v. Case*, 243 Or App 543, 552, 267 P3d 160 (2011) (in an adverse-possession case, finding no need to address an argument that the record owner of property allegedly had granted the adverse-possession claimants

---

[6] We reject plaintiff's argument that defendants cannot satisfy the 10-year adverse-possession period by tacking their possession to that of James. An adverse-possession claimant may tack his possessory interests to those of a predecessor "if there is evidence that the predecessor intended to transfer whatever adverse possessory rights he or she may have acquired." *Fitts v. Case*, 243 Or App 543, 549, 267 P3d 160 (2011). Here, James clearly intended his transfer of lot 3200 to defendants to include the disputed strip, given his belief that the fence marked the boundary line and his advertisement of lot 3200 as "fully fenced."

permission to farm the disputed land "because, assuming that those meetings did take place, they occurred after [the claimant's] title by adverse possession already had ripened"); *Pfaendler v. Bruce*, 195 Or App 561, 569, 98 P3d 1146 (2004) (noting that no Oregon appellate court has held directly that a real-property interest may be established through equitable estoppel). Property owners do not suddenly lose their property merely by remaining silent when another person disputes their ownership or makes a claim to the same land. Of course, a case could arise in which one party obtained title to property from its original owner through adverse possession, and title subsequently transferred back to the original owner (or that party's successor in interest) through operation of adverse possession or another specific equitable doctrine. But plaintiff made no claim that such a two-step property transfer occurred in this case, and the summary judgment record would not, in any event, support such a claim.

Affirmed.

# APPENDIX

Defendants' Deeded Property

Area awarded to Defendants under claim of adverse possession

Existing Fence

Property Boundary

Property Boundary

Plaintiff's Deeded Property

Continuing North-South Line created by existing fence

## SE Boise Street

(DRAWING NOT TO SCALE)