198 August 7, 2024 No. 540

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

Ernest W. BLOCK, Jr.,
*Plaintiff-Appellant,*
*and*

Marvin C. LEACH et al.,
*Plaintiffs,*

*v.*

DEA PROPERTIES-2 LLC,
*Defendant-Respondent.*

Tillamook County Circuit Court
17CV37076; A179046

Jonathan R. Hill, Judge.

Submitted October 25, 2023.

Gregory S. Hathaway, Trinh C. Tran, and Hathaway Larson LLP filed the briefs for appellant.

Steve C. Morasch and Landerholm, P. S. filed the brief for respondent.

Before Shorr, Presiding Judge, Mooney, Judge, and Pagán, Judge.

MOONEY, J.

Reversed.

MOONEY, J.

Plaintiff Ernest Block, Jr. (Block) appeals a general judgment that declares that his neighbor, defendant DEA Properties-2 LLC (DEA), "has an implied easement * * * over the flag stem portion of * * * Block's [property] to access" DEA's property.

This is the second time that this case has come before us. The first appeal was filed after the trial court entered a judgment granting declaratory relief on plaintiffs' claim by validating Block's assignment of beach-access easement rights across DEA's property to someone who owns neither the dominant nor the servient estate, and on DEA's counterclaim by declaring that DEA has an implied easement across Block's property to access DEA's property. We concluded that the trial court erred on both claims, and we reversed the judgment. *Block v. DEA Properties-2 LLC*, 315 Or App 525, 527, 501 P3d 545 (2021) (*Block I*). We concluded that the trial court applied an incorrect legal standard to the evidence produced at the bench trial on the implied easement counterclaim, and we remanded on the counterclaim with the following explanation and instruction:

> "In this case, the relevant severance took place in 1997, when the Hatch heirs sold parcel 2 to [the] DeCarrico[s] and retained ownership of parcel 1. However, in reaching its determination that an implied easement exists, the trial court relied significantly on events and circumstances that took place later. For example, it relied on the beliefs and actions of Block and Anderson, who purchased their properties after 1997; it evaluated the necessity of the easement based on circumstances at the time of trial, rather than the circumstances that existed in 1997; and it considered the use of the property and the parties' knowledge of that use since 1997, rather than at the time of the Hatch heirs' 1997 conveyance to [the] DeCarrico[s]. That was error.

> "The question before the court was whether an easement arose 'as an inference of the intention of the parties to a conveyance of land'—here, the Hatch heirs and [the] DeCarrico[s]—'based on the circumstances existing at the time of the conveyance'—here, in December 1997. *Eagles Five, LLC v. Lawton*, 250 Or App 413, 424, 280 P3d 1017 (2012). As a result of the court's incorrect legal analysis, it

did not make explicit or implicit findings of fact on many of
the relevant issues. Accordingly, we reverse and remand for
the trial court to reevaluate the evidence under the correct
legal standard."

*Id.* at 536-37. On remand, the trial court received further
briefing and arguments of counsel, and after issuing a let-
ter ruling explaining its decision, it signed a general judg-
ment again declaring that DEA has an implied easement
over Block's property to access DEA's property. This appeal
followed. The beach-access easement issues are not before
us on this second appeal. The only matter before us is that
of the implied easement raised in DEA's counterclaim. For
the reasons explained below, we conclude that DEA failed to
carry its burden to prove the existence of an implied ease-
ment by clear and convincing evidence. We therefore reverse.

## I.   STANDARD OF REVIEW

We decline Block's request to review the record
*de novo* because such review is not warranted. It is true that
this is the second time that this case is before us, and it
is also true that this appeal raises a claim of legal error
essentially identical to the one raised in the first appeal.
In Block's view, the 2018 judgment on the counterclaim
that we reversed and remanded for further analysis and
the 2022 judgment rendered on remand "can hardly be dif-
ferentiated." That is not a fair characterization of the two
judgments, especially considering that the 2022 judgment
incorporates the trial court's four and a half-page letter rul-
ing of June 10, 2022. He argues that "there is no evidence
in the record to support several of the trial court's factual
findings" and also that "the trial court has misconstrued
the law for a second time." We view the factual record differ-
ently than does Block, however, and decline to "try the cause
anew." ORS 19.415(3)(b); ORAP 5.40(8).

We review for legal error the trial court's ruling
that DEA proved its counterclaim for an implied easement.
*Manusos v. Skeels*, 263 Or App 721, 724, 330 P3d 53 (2014).
We state the relevant facts "in a manner consistent with the
trial court's express and implicit factual findings." *Id.* If the
record so viewed supports the inference, by clear and con-
vincing evidence, that at the time of the conveyance in 1997,

the Hatch heirs and the DeCarricos intended for there to be an easement providing access to parcel 2 across the flag stem of parcel 1, then we must affirm. Otherwise, we must reverse.

## II.   THE FACTS

Block and DEA are neighboring landowners. They own adjoining parcels of real property that were previously part of a larger tract of land held by Phillip Hatch and other tenants in common (the Hatch heirs). Their respective parcels were created in 1994 when the Hatch heirs subdivided their property into three parcels, with parcel 1 (presently owned by Block) shaped like a flag, with its "flag stem" running generally south to Ocean Boulevard between parcel 2 (presently owned by DEA) and parcel 3, as shown below.[1]



Partition Plat 1994

In February 1995, the Hatch heirs recorded an easement granting parcel 3 a "permanent, non-exclusive easement for access and utility purposes" over the flag stem.

---

[1] The diagrams in this opinion are intended only to facilitate the reader's understanding of the subdivisions and conveyances in question. The drawings do not depict all elements included in the relevant survey records.

They did not record the grant of similar easement rights for the benefit of parcel 2. Several months later, the Hatch heirs subdivided the third parcel into two parcels. The recorded "replat" of the property in 1995 reflects the subdivision of parcel 3 into parcels 1-East and 2-East and adds a reference to the easement serving the parcel thus subdivided.

## Partition Plat 1995



In 1997, Melvin and Jeanette DeCarrico purchased parcel 2 from the Hatch heirs. Parcel 2 was conveyed "free of liens and encumbrances" except for a beach access easement expressly reserved in the deed of conveyance over a portion of parcel 2 for the benefit of parcel 1. At the time of the 1997 conveyance, there was "an existing dirt road" that was part of parcel 1's flag stem. At the time they purchased parcel 2 from the Hatch heirs, the DeCarricos believed that they would have legal access to parcel 2 from that dirt road. The DeCarricos employed a contractor to build a house for them on parcel 2. While building the house, the contractor "graveled [the] DeCarrico[s'] driveway area and at the same time

graveled [the] DeCarrico[s'] frontage along the existing dirt road" that went alongside the eastern boundary of parcel 2.

Parcel 2 was also accessible directly from Ocean Boulevard at a point west of the flag stem, but that access was difficult given its topography and vegetation. From the time they first purchased parcel 2 from the Hatch heirs, the DeCarricos used the flag stem road primarily, but not exclusively, to gain access to their property. The access point directly off of Ocean Boulevard was not modified or developed leading up to or around the time of the 1997 conveyance of parcel 2 from the Hatch heirs to the DeCarricos. Mr. DeCarrico eventually roped off the Ocean Boulevard access to parcel 2, and he used and maintained the access road on the flag stem as the primary access for his property.



Parcels 1 and 2 in 1997

The Hatch heirs continued to own parcel 1 until 2003 when they sold it to Block. Block believed that the existing dirt road extending from Ocean Boulevard to his parcel was a county road. He did not discover that the road was, in fact, on the flag stem of his property until 2015. That was the year that DEA purchased parcel 2 from the DeCarricos. It was also the year when Block initiated the underlying litigation concerning the validity of his assignments to others of beach access rights over parcel 2.

## III.   ANALYSIS

We recently described the general legal principles applicable to implied easements as follows:

"When land in one ownership is divided into separately owned parts by a conveyance, an easement may be created by implication from the circumstances under which the conveyance was made alone. That is, an implied easement is created when the circumstances that exist at the time of severance of a parcel establish that the grantor of the parcel intended to create an easement.

"Although the grantor must have intended to create an easement at the time of severance, that does not mean that the grantor had to form such intent consciously. Rather, the circumstances must be such as to permit an inference that *had the grantor put his mind to the matter* he would have intended the servitude to be created. To make that determination, the court views the circumstances from the putative grantee's point of view: We think that the proper adjustment of the conflicting claims of the parties in this type of case can be arrived at more directly by attempting to determine what a reasonable grantee would be justified in expecting as a part of his bargain when he purchases land under the particular circumstances. Thus, the essential question is whether a reasonable purchaser would be justified in expecting the easement under the circumstances in which he or she purchased the land."

*Ghiglieri v. Tomalak*, 304 Or App 717, 721-22, 469 P3d 262 (2020) (citations and ellipses omitted; emphasis in original).

The inquiry into whether an implied easement exists is necessarily fact-driven. The Supreme Court has identified a list of eight nonexclusive factors that are "important" to the analysis: (1) whether the claimant is the conveyor or the conveyee; (2) the terms of the conveyance; (3) the consideration given for it; (4) whether the claim is made against a simultaneous conveyee; (5) the extent of necessity of the easement to the claimant; (6) whether reciprocal benefits result to the conveyor and the conveyee; (7) the manner in which the land was used prior to its conveyance; and (8) the extent to which the manner of prior use was or might have been known to the parties. *Cheney v. Mueller*, 259 Or 108, 118-19, 485 P2d 1218 (1971) (internal quotation

marks omitted). As we apply those factors and weigh the evidence here, we keep in mind that "[i]mplied easements are disfavored and must be established by clear and convincing evidence." *Manusos*, 263 Or App at 724.

Because we are reviewing for legal error, the question we must answer is whether the evidence is sufficient to support the trial court's ruling that DEA met its burden to establish the existence of an implied easement over the flag stem in favor of parcel 2 by clear and convincing evidence. The key question is whether DEA established that a reasonable purchaser in the DeCarricos' position would have been "justified in expecting the easement" under the facts and circumstances that were present in 1997 when the DeCarricos purchased parcel 2 from the Hatch heirs. *Ghiglieri*, 304 Or App at 723 (explaining that the dispositive question at issue in an implied easement case is whether a reasonable buyer would have been justified in expecting the easement under the circumstances that existed at the time of purchase) (internal quotation marks omitted). Our review of the record using the *Cheney* factors as a framework for our analysis leads us to conclude that the evidence was not sufficient to support a determination that an easement arose "as an inference of the intention of the parties to a conveyance of land—here, the Hatch heirs and [the] DeCarrico[s]—based on the circumstances existing at the time of the conveyance—here, in December 1997." *Block I*, 315 Or App at 536-37 (internal quotation marks omitted). We reverse.

A.  *Whether the Claimant is the Conveyor or the Conveyee*

This factor weighs in DEA's favor because the DeCarricos, DEA's predecessors in interest, were the conveyees in the 1997 real estate transaction and the law will generally "imply an easement in favor of a grantee more readily than in favor of a grantor." *Cheney*, 259 Or at 123. We read the trial court's finding on this factor to be consistent with ours.

B.  *The Terms of the Conveyance*

The trial court's finding with respect to this factor was this:

"Mr. DeCarrico bought the land from Hatch heirs to build a house.

"Mr. DeCarrico built the house that is accessed from the road that parties thought was Ocean Blvd. However, the road was actually on the flag stem lot."

The finding itself is clearly supported by the record, but it does not directly address the terms of the conveyance. We read the trial court's finding to suggest that the court was persuaded by the evidence that building a house on parcel 2 oriented with access from and over parcel 1's flag stem was an essential part of the bargain between the DeCarricos and the Hatch heirs and that the terms of the conveyance itself, therefore, do not weigh against the existence of an implied easement.

The 1997 statutory warranty deed from the Hatch heirs to the DeCarricos specifically reserved a beach access easement over parcel 2 in favor of parcel 1, and it was otherwise "free of liens and encumbrances." The Hatch heirs did not include language in the warranty deed expressly conveying to the DeCarricos an easement over the flag stem of parcel 1. They had, however, granted an express easement for access over the flag stem of parcel 1 to parcel 3 in 1995. And while we reject Block's argument that the absence of an express easement over parcel 1 for the benefit of parcel 2 is dispositive, we do find that the conscious decision to grant express access rights over the flag stem in favor of parcel 3 is evidence that the Hatch heirs knew how to create such access rights over the parcel 1 flag stem for the benefit of parcel 2 should they have wanted to do so. That evidence also significantly undermines DEA's central contention that the Hatch heirs intended the flag stem to function as a "common roadway" for all the parcels in the subdivision, including the DeCarricos' property.

C.  *The Consideration Given for it*

This factor weighs in DEA's favor, and that is how we interpret the trial court's finding as well. The court wrote that the DeCarricos "bought the lot, leveled it, graded it and built a house with the driveway oriented to the roadway in question," and the evidence clearly supports that.

Block relies on *Thompson v. Schuh*, 286 Or 201, 593 P2d 1138 (1979), to argue that the giving of consideration weighs against finding an easement by implication; we disagree with that contention. As the Supreme Court explained in *Rose et ux. v. Denn et ux.*, 188 Or 1, 212 P2d 1077 (1949), *reh'g den*, 188 Or 1, 213 P2d 810 (1950), the fact that one gives consideration in exchange for an interest in property weighs in the conveyee's favor: "If a conveyance is gratuitous the implications are less favorable to the conveyee than is true if he pays value for it." *Id.* at 20-21 (internal quotation marks omitted). By contrast, in *Thompson*, the court noted that "[w]*here the claimant is the grantor*, the fact that the grantee paid consideration for the land * * * suggests that an implied easement * * * was not contemplated." 286 Or at 214 (emphasis added). DEA is the DeCarricos' successor in interest, and the DeCarricos were the conveyees in the pertinent transaction who gave consideration for parcel 2.

D.  *Whether the Claim is Made Against a Simultaneous Conveyee*

The trial court correctly concluded that this factor does not apply to this case. Where a common grantor divides property and simultaneously conveys that property to multiple conveyees, we assume that the grantor intended "very considerable privileges of use" to exist between the parcels. *Rose*, 188 Or at 21. The Hatch heirs retained ownership of parcel 1 for several years after conveying parcel 2 to the DeCarricos. This case does not involve simultaneous conveyances.

E.  *The Extent of Necessity of the Easement to the Claimant*

The trial court concluded that, despite the fact that the access point from parcel 2 directly onto Ocean Boulevard existed and could be developed, DEA had established reasonable necessity for an easement over the flag stem because the dirt road on it existed in 1997, the "practice for access to" parcel 2 at the time of the 1997 conveyance was over that dirt road, and the DeCarricos oriented their house for access from and over that dirt road. We do not agree. The evidence does not support a finding of reasonable necessity by clear and convincing evidence.

While it is true that absolute necessity is not required, reasonable necessity must be established for an easement to arise by implication. *Jack v. Hunt et ux.*, 200 Or 263, 269, 264 P2d 461 (1953), *reh'g den*, 200 Or 263, 265 P2d 251 (1954). "Reasonable necessity is a line drawn somewhere between literal necessity and mere convenience, being driven by policy considerations, but ultimately being judged by what a reasonable grantee would be justified in expecting as a part of his bargain when he purchases land under the particular circumstances." *Ghiglieri*, 304 Or App at 725 (internal quotation marks omitted).

We relied heavily on reasonable necessity and recognized an implied easement over neighboring property in *Ghiglieri* where the placement of a fence made it difficult, though not impossible, to access residential property without "substantial inconvenience and safety concerns[,] *** including the inability to come and go from the property at night." *Id.* at 726. We ultimately concluded that a reasonable purchaser would be justified in expecting "not to have to drive backwards to get to the parking area for the house, particularly given the steepness of the driveway." *Id.* at 726-27.

By contrast, the Supreme Court declined to recognize an implied easement in *Jack* where the conveyee purchased the property for residential use and subsequently made improvements for business purposes. 200 Or at 272. The court did not find those improvements to be significant to the analysis because "at the time of th[e] transaction, in the minds of both the plaintiff and the defendants, the plaintiff's property was to be used solely for residential purposes." *Id.* As to necessity, because there was sufficient space for a walkway, the plaintiff failed to show that accessing the back of the house by car was more than a mere convenience. *Id.* at 272-73.

Here, the fact that the DeCarricos oriented their house toward access over the flag stem after they had purchased the property does not provide clear or convincing evidence that, at the time of the conveyance, they were justified in expecting that they would receive the right to that access as a part of their transaction with the Hatch heirs, or

that such access was more than a mere convenience. Even though testimony from DEA's principal Anderson and from Mr. DeCarrico explained that using the direct access from Ocean Boulevard posed certain challenges, the significance of that testimony is undermined by Mr. DeCarrico's own admissions that he sometimes used the Ocean Boulevard access after his purchase until eventually roping it off. Although access from Ocean Boulevard might be less than ideal, the evidence does not establish the sort of safety concerns or limitations on ingress or egress present in *Ghiglieri* such that a reasonable purchaser in the DeCarricos' position would expect access from the flag stem as part of the bargain.

We accept that the DeCarricos believed that the dirt road on the flag stem was a public roadway, but parcel 2 had been created with other direct access to Ocean Boulevard that was separate and apart from the dirt road. And while the conveyee's perspective may provide insight into the conveyor's intent, the fact remains that when the Hatch heirs subdivided their property into smaller parcels in the mid-1990s, they created parcel 1 as a flag lot. As designed, the parcel 1 flag stem provides the necessary access to Ocean Boulevard for three of the four parcels. Parcel 1 extends to Ocean Boulevard. Parcels 2-East and 1-East require easement rights to assure access to Ocean Boulevard and the Hatch heirs, in fact, gave express access rights to Ocean Boulevard for those two parcels over the parcel 1 flag stem. Parcel 2 was not granted similar express easement rights, but it already had access to Ocean Boulevard by way of the separate access that was part of parcel 2 when the DeCarricos purchased it and that they later physically roped off. Evidence of the DeCarricos' mistaken belief about the dirt road and of their post-conveyance development of parcel 2 does not provide clear evidence of the Hatch heirs' intent in 1997 when they sold parcel 2 to the DeCarricos. Therefore, this factor weighs in Block's favor.

F.  *Whether Reciprocal Benefits Result to the Conveyor and the Conveyee*

The trial court found that DEA could help Block with the maintenance costs of the road. We extrapolate from

that finding that DEA's predecessor in interest at the time of the 1997 conveyance—the DeCarricos—could help with road maintenance costs. The record certainly reflects that the DeCarricos improved the dirt road after the conveyance occurred. But neither party points to evidence at the time of the conveyance on this factor and we have found none. Moreover, the reciprocal benefit factor focuses on reciprocal *use* of the parties' respective properties, as opposed to any shared costs. *Compare Rose*, 188 Or at 25 (reasoning that the road in question was "indispensable to both conveyor and conveyee" where the road crossed through both parties' properties and enabled one party to access other portions of their property and enabled the other party to access a county road) *and Ghiglieri*, 304 Or App at 727 (weighing this factor in favor of an implied easement because the record suggested that both parties relied on use of a portion of each other's properties for ingress and egress) *with Thompson*, 286 Or at 215 (distinguishing the case from *Rose* on the basis that no reciprocal benefit was shown where use of the disputed road did not provide any mutual benefit of access to the parties' respective properties). Without evidence of reciprocal benefit, this factor weighs against finding an implied easement.

G.    *The Manner in Which the Land was Used Prior to its Conveyance*

The trial court found, among other things, that the Hatch heirs developed four lots that could be accessed by the dirt road on the flag stem, that the dirt road existed at the time of the conveyance to the DeCarricos, that Mr. DeCarrico used the dirt road to access parcel 2 after he purchased it, and that the Hatch heirs "intended" for that use to continue.

"Parties to a conveyance may \*\*\* be assumed to intend the continuance of uses known to them which are in a considerable degree necessary to the continued usefulness of the land." *Cheney*, 259 Or at 121 (internal quotation marks omitted). While evidence of prior use "cannot of itself establish an easement," it "strongly support[s] an implied easement claim, because prior use consistent with a claim provides a firm basis from which to infer intent." *Dayton v. Jordan*, 280 Or App 236, 242, 381 P3d 1041 (2016).

The record does not establish use of the flag stem to access parcel 2 until after the 1997 conveyance had occurred. We accept that a purchaser visually inspecting the property might make assumptions about the dirt road and its relationship to Ocean Boulevard. But recorded property records such as the 1994 and 1995 plat records would have made clear that the dirt road was in fact private, or, at a minimum, caused a reasonable purchaser to make further inquiry. Given that parcel 1 was itself created with direct access to Ocean Boulevard *vis-à-vis* its flag stem, that the Hatch heirs gave an express easement over the flag stem for the benefit of parcel 3 (which later became parcels 1-East and 2-East in 1995), and that parcel 2 had its own direct access to Ocean Boulevard without having to use the flag stem, the lack of evidence of pre-1997 conveyance use weighs against finding an easement by implication.

H.  *The Extent to Which the Manner of Prior Use Was or Might Have Been Known to the Parties*

The trial court found that the roadway in question existed at the time of the conveyance to the DeCarricos, that the DeCarricos used the roadway to access their parcel, that the DeCarricos built their house and driveway to be oriented for access from that roadway, and that in the six years between the sale to the DeCarricos and the sale to Block the Hatch heirs raised no questions about the DeCarricos' development of parcel 2 with a home and driveway that incorporated and used the dirt road, and therefore the flag stem, in its access design. The trial court erred in concluding that the "clear inference is that at the time of the conveyance the Hatch heirs intended that Mr. DeCarrico use the existing roadway to access his property," because the bulk of the evidence of use was post-conveyance. The parties' actions following the conveyance cannot by themselves establish the parties' intent at the time of the conveyance. As we have said:

"At its core, [the claimants'] argument is that they have used the road without complaint for many years. And yet that fact is irrelevant to an analysis of whether an implied easement exists. That analysis involves a historical inquiry and [the claimants] have failed to allege historical facts to

inform it. Accordingly, we agree with the trial court that [the claimants] are not entitled to an easement."

*Waters v. Klippel Water, Inc.*, 304 Or App 251, 259, 464 P3d 490 (2020). The prior use factor does not provide support for an implied easement, and it weighs against DEA.

## IV.   CONCLUSION

Of the eight *Cheney* factors, two weigh in favor of an implied easement, one factor does not apply to this situation, and the other five factors weigh against an implied easement. But we do not reach our conclusion by simply tallying the score. We rely on our discussion of each of the factors, adding that there is overlap between and among the factors that weigh against an implied easement. The evidence is not sufficient to clearly and convincingly establish an easement by implication. The trial court erred in concluding otherwise. To be clear, it is apparent from the trial court's rulings that it was using the correct legal standard on remand. It nevertheless erred because the factual record does not support the legal conclusion that an easement arose by implication at the time of conveyance in 1997.

Reversed.