No. 271          April 2, 2025          321

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

Wendy REHWALD,
*Plaintiff-Respondent,*
*and*

TCS TRAFFIC CONTROL SERVICES, LLC,
fka TCS Traffic Services LLC,
an Oregon limited liability company,
*Defendant-Respondent,*

*v.*

Raymond J. FRANZE,
and Karla M. Franze,
Trustees of the Raymond J. and Karla M. Franze
Revocable Living Trust dated December 13, 2018,
*Defendants-Appellants,*

*and*

ROGUE HYDRO X, LLC,
an Oregon limited liability company,
*Defendant.*
Josephine County Circuit Court
20CV38628; A181870

Sarah E. McGlaughlin, Judge.

Argued and submitted March 10, 2025.

Rachele R. Selvig argued the cause for appellants. Also on the briefs was David, Hearn, Anderson & Selvig PC.

Dominic M. Campanella argued the cause and filed the brief for respondents.

Before Tookey, Presiding Judge, Kamins, Judge, and Jacquot, Judge.

TOOKEY, P. J.

Reversed and remanded.

**TOOKEY, P. J.**

This case concerns a property-related dispute between neighbors. The trial court determined that plaintiff obtained an easement by equitable estoppel to use an improved area on defendants' property as a secondary entrance to her property. Defendants did not object to plaintiff using the property when plaintiff was using it, but they also did not expressly grant plaintiff permission to use the property.

In their only assignment of error, defendants contend that the trial court erred in determining that "an easement by estoppel arose from [defendants'] failure to object" to plaintiff's use of their property.

We conclude that, even if an easement could be established by equitable estoppel in Oregon, it could not be created "without an affirmative promise or representation" on the part of landowner. *Pfaendler v. Bruce*, 195 Or App 561, 571, 98 P3d 1146 (2004). That is, an easement by estoppel cannot be created through a landowner's "failure to object" to another's use of their property. Accordingly, we reverse and remand.

## BACKGROUND

Plaintiff and defendants live on adjoining rural residential parcels in Josephine County. Defendants' property is a "flag lot." A long and thin portion of the property—the "flagpole"—connects the public road to a larger portion of the property farther from the road—the "flag"—where defendants' home sits. Defendants access their home by a paved driveway along the "flagpole." Plaintiff's property is adjacent to defendants' property and the public road but is not accessible directly from the public road. Plaintiff accesses her property via an express easement along the paved driveway built along the flagpole of defendants' property, curving onto plaintiff's property, and then curving back onto defendants' property (the "shared driveway"). That easement—along with the reciprocal easement that defendants possess to use the part of the driveway on plaintiff's property—is recorded in the deeds to both properties.

Plaintiff purchased her property after defendants had been living on the neighboring property for four years, and the parties developed a close friendship. Plaintiff also began to make significant improvements to her property, including by removing vegetation, grading, and building a fence. To make those improvements, plaintiff accessed the lower portion of her property via a new entrance that she built closer to the road (the "lower entrance"). To use the lower entrance, plaintiff traversed a narrow portion of the flagpole of defendants' property, between the paved driveway easement and plaintiff's property line (the "lower driveway"). In spring 2020, plaintiff surfaced that lower driveway, which is on defendants' property and not a part of her easement.

Defendants routinely observed plaintiff's improvements at the lower entrance and development of the lower driveway but did not object to those changes until after plaintiff installed a gate in her fence line at the lower entrance. Then, defendants used boulders to block the lower driveway, preventing plaintiff from using the lower driveway and lower entrance to access her property. Plaintiff initiated this suit to prevent defendants from blocking her use of the lower driveway; defendants' filed crossclaims, including for trespass; and plaintiff asserted the defense of easement by estoppel.

After a bench trial that included testimony by plaintiff and both defendants, the trial court rejected defendants' crossclaim for trespass and concluded "that plaintiff has an easement to the lower entrance by estoppel." In so concluding, the trial court found that defendants did not "explicitly promise plaintiff she could access her property through the lower entrance" but that they instead "remained silent as plaintiff consistently accessed her land [for two years via the lower entrance] and discussed her ongoing improvements with defendants." The trial court also determined "that defendants' silence, in the context of the parties' relationship, rises to the level of a 'false representation' on which plaintiff erroneously relied, to her detriment; and that plaintiff's reliance and detriment would have been reasonably foreseeable to defendants."

In so ruling, the court also concluded that plaintiff did not have an "irrevocable license" to use the lower driveway, because "[t]here is no evidence that defendants made plaintiff an explicit promise to allow plaintiff to permanently access [her lot] through the lower entrance."

The trial court entered a judgment consistent with its ruling, and this appeal followed.

## DISCUSSION

On appeal, defendants challenge the trial court's conclusion that an easement had been established by equitable estoppel.[1] "We review the trial court's findings of fact for any evidence to support them, * * * and its legal conclusions for errors of law." *Allco Enterprises v. Goldstein Family Living Trust*, 183 Or App 328, 330, 51 P3d 1275 (2002); *see also Block v. DEA Properties-2, LLC*, 334 Or App 198, 200-01, 555 P3d 1268 (2024) (applying the same standard of review to a property dispute involving an implied easement).

At the outset, we summarize the legal doctrines underlying our analysis in this case, relating to easements, licenses, and equitable estoppel.

An easement is a nonpossessory interest in land owned by another person and is typically recorded in the deeds to both dominant and servient properties. *See, e.g.*, *Clark v. Kuhn*, 171 Or App 29, 33-34, 15 P3d 37 (2000) (describing a recorded easement for the purposes of ingress and egress). In contrast, "'[a] license consists of a landowner's consent to the use of his property by another in a way which would otherwise be wrongful.'" *Joseph Mill Property, LLC v. S&V Properties, LLC*, 301 Or App 319, 323, 455 P3d 526 (2019) (quoting *Rouse v. Roy L. Houck Sons' Corp.*, 249 Or 655, 660, 439 P2d 856 (1968)); *see also* Herbert Thorndike Tiffany, 3 *Tiffany Real Prop* § 829 (3d ed 2024) ("A license, it has been said, passeth no interest, nor alters or transfers property in anything, but only makes an action lawful which without it, had been unlawful[.]" (Internal quotation marks omitted.)).

---

[1] Defendants do not separately assign error to the trial court's rejection and dismissal of their crossclaim for trespass.

In this case, as noted, the trial court determined that plaintiff does not have an irrevocable license to use defendants' property, but that plaintiff does have an easement, despite it not being recorded. The trial court determined that plaintiff's easement was established by equitable estoppel.

"Under the doctrine of equitable estoppel, a person's acts or conduct, or silence when it was the person's duty to speak, may preclude the person from asserting a right that the person otherwise would have had." *Knapp v. Daily*, 96 Or App 327, 332, 772 P2d 1363 (1989). To prove equitable estoppel, a party must prove that the party against whom the estoppel is urged knowingly made a false representation with the intent that the first party act on that representation, and that the first party did act on the representation to their detriment. *Crain v. Siegel*, 151 Or App 567, 574, 950 P2d 382 (1997). "Silence may satisfy the false-representation element—that is, a false representation may be made by silence, as well as by speech, much like an omission may take the place of an act—but only if a party is silent when it has a duty to speak." *Nelson v. Liberty Ins. Corp.*, 314 Or App 350, 359-60, 498 P3d 861 (2021) (internal quotation marks omitted). A "duty to speak does not arise unless the party against whom the estoppel is urged knew or should have known that a failure to speak would probably mislead the other party to act to his or her detriment." *Knapp*, 96 Or App at 332.

On appeal, noting the trial court's finding that defendants "did not explicitly promise plaintiff that she could access her property through the lower entrance[,]" and pointing to our decision in *Pfaendler*, 195 Or App at 571, defendants argue that "[p]laintiff cannot acquire a property interest in [defendants'] property merely based on [defendants'] acquiescence to [p]laintiff's use."

Plaintiff responds that the trial court "correctly held that plaintiff has an easement by estoppel over defendants' property to access the lower entrance she built[,]" noting, among other facts, the improvements that plaintiff made on her property in reliance on her ability to use the lower driveway and defendant's knowledge of those improvements.

No Oregon appellate court has applied the doctrine of equitable estoppel to establish an interest in real property such as an easement. *See Pfaendler*, 195 Or App at 569 ("Although several cases in Oregon have appeared to recognize the application of that doctrine to establish an interest in real property, our research has not revealed any case in which an Oregon appellate court has held that directly." (Footnotes omitted.)). And, in *Pfaendler*, we stated that, because an irrevocable license cannot be created by "mere acquiesce in the use of one's land without an affirmative promise or representation," an easement could also not be created in that manner:

> "We also note that Oregon case law on irrevocable licenses is clear that mere acquiescence in the use of one's land without an affirmative promise or representation does not suffice to create an irrevocable license to use a property owner's property. We perceive no reason why the law should be applied in a different manner when the establishment of an easement by equitable estoppel is sought."

*Id.* at 571; *see also Tieu v. Morgan*, 246 Or App 364, 374, 265 P3d 98 (2011) (in the context of an adverse possession claim, explaining that "[p]roperty owners do not suddenly lose their property merely by remaining silent when another person disputes their ownership or makes a claim to the same land").

The trial court noted the above quoted passage from *Pfaendler* when concluding that plaintiff had an easement by equitable estoppel, but it did not follow the passage, because it stated that the passage was *dicta*. Regardless whether the trial court was right that the passage was *dicta*, we think that reasoning in *Pfaendler* is sound.

An irrevocable license is created when one "induces another to make significant expenditures for permanent improvements in reasonable reliance upon one's *promise* to allow a permanent use of land[,]" and requires an "affirmative promise or representation." *Pfaendler,* 195 Or App at 569 n 6, 571 (internal quotation marks omitted; emphasis in *Pfaendler*). And an irrevocable license is merely consent to use property. *Joseph Mill Property, LLC*, 301 Or App at 323. In contrast, as discussed above, an easement involves the

transfer of a property right. If, under Oregon law, an irrevocable license cannot be established absent an affirmative promise or representation, we see no reason why the more significant right that an easement creates could be created without an affirmative promise or representation.[2]

In view of the above, we conclude that the trial court erred when it concluded that an easement by equitable estoppel was established through defendants' silence. As the trial court found, "defendants did not explicitly promise plaintiff that she could access her property through the lower entrance." And we understand it to follow from the trial court's determination that there was no irrevocable license created, that there was also no "representation" on the part of defendants that would be sufficient to support plaintiff's theory of easement by equitable estoppel.[3]

Reversed and remanded.

---

[2] As one leading treatise explains in comparing a license and an easement:

"In so far as an easement involves, as it ordinarily does, the privilege of doing or not doing a certain class of act on or in connection with another's land, there is a superficial resemblance between an easement and the privilege created by a license. The distinction between such an easement and a license privilege lies primarily in the fact that the licensee has a privilege and nothing more, while the holder of an easement has not only a privilege but also rights against the members of the community in general, including the owner of the land, that they refrain from interference with the exercise or enjoyment of the privilege."

Tiffany, 3 *Tiffany Real Prop* § 829 (footnote omitted).

[3] In seeking a different result, plaintiff points to a number of cases, but none of those cases conflicts with the basic premise upon which we conclude that the trial court erred: No Oregon appellate court has recognized as valid the creation of an easement by equitable estoppel, and an irrevocable license cannot be created without an affirmative promise or representation. *See*, *e.g.*, *Curtis v. La Grande Water Co.*, 20 Or 34, 44-46, 23 P 808, *modified on reh'g*, 20 Or 47, 25 P 378 (1890) (in discussing whether the license at issue was revocable, citing a Delaware case suggesting that a license might be converted into an easement under particular circumstances); *Shaw v. Proffitt*, 57 Or 192, 202-03, 109 P 584 (1910) (discussing the question of whether the plaintiff had an irrevocable license to use the ditches on the defendant's land and commenting that "the license relied on must be an express agreement, and not a mere passive acquiescence"); *Corey v. United Savings Bank*, 52 Or App 263, 272, 628 P2d 739 (1981) (commenting that the plaintiffs' "theory [of easement by equitable estoppel] is sound enough, but the record supporting it is wanting").